LOVELAND PROPERTIES, APPELLEE, *v.* TEN JAYS, INC. ET AL., APPELLANTS; JENKINS.

*Aronoff, Rosen & Stockdale* and *David C. Stockdale,* for appellee.

*Wilson & Wilson Co., L.P.A.,* and *Charles E. Wilson, Jr.,* for appellants.

(No. C-870700—Decided June 15, 1988.)

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Hamilton County. Due to the complexity of the issues raised on appeal, we have *sua sponte* removed this case from the accelerated calendar.

One question in this appeal is whether under the facts disclosed by the record, the assignees of a real estate lease can be held liable for rent not paid by their (subsequent) assignee, when the assignment was defectively executed under R.C. 5301.01. Another question is whether summary judgment against the guarantors of the first assignees' performance under the lease was properly granted in the light of an unresolved question about the consideration for the guaranty.[1]

Plaintiff-appellee, Loveland Properties, an Ohio partnership, sued the four defendants (as the assignees of the original lessee) for unpaid rent, unpaid utilities and "maintenance obligations." The trial court overruled defendants' motion to dismiss the complaint and later granted the plaintiff's motion for summary judgment, in part, against three of the four defendants for unpaid rent in the amount of $9,440. It is these two orders that are questioned in this appeal. Subsequent to the journalization of the entry awarding recovery of unpaid rent to Loveland Properties, the claims for unpaid utilities and maintenance obligations were tried to the court without a jury; the court ruled in favor of the plaintiff, and final judgment was entered against the defendants. The award for unpaid utilities and maintenance obligations is not questioned on appeal.

The summary judgment claimed by defendants to be erroneous was made on the basis of documents attached to the complaint. The trial court had before it no other evidentiary material, such as affidavits, depositions, stipulations and the like. An excerpt from the bench trial is in the record on appeal, but we disregard it because it was not before the trial court when summary judgment was granted. We are limited to the facts as revealed by the documents that were before the court at that time, and our statement of the factual basis for the judgment is derived from them. Stated chronologically, there are eight significant events.

First. On April 27, 1979, Brown Realty, Inc. leased a restaurant (known as "Frontier Lounge") in a shopping center to H. E. Glass for a five-year term, subject to renewal for another five years. The lease was fully executed pursuant to R.C. 5301.01.

Second. On April 4, 1980, H. E. Glass assigned his interest as lessee to Robert J. Jennings (individually) and Ten Jays, Inc., an Ohio corporation of which Robert J. Jennings was president. Brown Realty, Inc. consented to the assignment. The assignment had only one witness and there was no notarization; thus, the assignment did not comply with R.C. 5301.01.[2]

---

[1] We use "guaranty" as a noun describing the promise to answer for the debt of another, and "guarantee" as a transitive verb descriptive of the act, because this use of words is consistent with the use found in the Uniform Commercial Code, particularly R.C. 1303.52.

[2] R.C. 5301.01 reads in full:
"A deed, mortgage, land contract as referred to in division (B)(2) of section 317.08 of the Revised Code, or lease of any interest in real property must be signed by the grantor, mortgagor, vendor, or lessor, and such signing must be acknowledged by the grantor, mortgagor, vendor, or lessor in the presence of two witnesses, who shall attest the signing and subscribe their names to the attestation. Such signing must be acknowledged by the grantor, mortgagor,

Third. On May 15, 1980, Robert J. and Mary Jennings signed "personally and individually" an unconditional guaranty of the payment of rent and full performance of the lease by Ten Jays, Inc., "[i]n consideration of the consent by Brown Realty, Inc., to the assignment of the lessees' interest from H. E. Glass to Ten Jays, Inc." There was one witness to the two signatures.

Fourth. By reasonable inference from the facts disclosed in the record, [3] Brown Realty, Inc. sold and conveyed the restaurant (presumably as part of the shopping center) to Loveland Properties, at some unknown time after the third event and before the fifth.

Fifth. On January 8, 1983, Loveland Properties and Ten Jays, Inc. entered into a "Lease Addendum" which recited that they were "the Assignees of said Lease Agreement of the above original parties" (that is, Brown Realty, Inc. and H. E. Glass), and that they agreed "to replace the present *separate* heating and air conditioning systems with a *combined* heating and air conditioning unit" (emphasis added). They agreed that Ten Jays, Inc. would give Loveland Properties a promissory note for $5,564.20 representing the "air conditioning share" of the improvement, that Loveland Properties would contribute $6,424.50 representing the "heating portion" of the improvement, and that Loveland Properties would pay the entire cost of the improvement upon completion. This Addendum was fully executed in compliance with R.C. 5301.01.

Sixth. By reasonable inference from the facts disclosed in the record, Ten Jays, Inc. renewed the term of the lease for another five years, at some unknown time after the fifth event and before the seventh.

Seventh. On July 26, 1985, Ten Jays, Inc. assigned its interest as lessee to defendant Harvey C. Jenkins individually. The assignment contains the covenant of Ten Jays, Inc. that the "lease is genuine and in full force and effect," and that Ten Jays, Inc. had "full right to assign said lease." (It is stated by the parties that Loveland Properties consented to this assignment, but we do not find a written consent in the record. Nor do we find any notarization of this assignment, even though it was duly witnessed.)

Eighth. In September 1985, Harvey C. Jenkins defaulted on the lease, failing to pay the rent, thus giving rise to plaintiff's rent claim. Jenkins later filed for and was discharged in bankruptcy. (While Jenkins was joined as a defendant, he did not make an appearance in the case; no judgment was rendered against him by the court of common pleas by reason of his discharge in bankruptcy, and he is not represented in the present appeal.)

Loveland Properties sued Ten Jays, Inc., Robert J. and Mary Jennings and Harvey Jenkins for Jenkins's unpaid rent, and for utilities and maintenance (repairs). The court

---

vendor, or lessor before a judge of a court of record in this state or a clerk thereof, a county auditor, county engineer, notary public, mayor, or county court judge, who shall certify the acknowledgment and subscribe his name to the certificate of such acknowledgment."

[3] As noted above, the excerpt from testimony at the bench trial (on claims for unpaid utility and maintenance bills) was not before the court when the summary judgment was rendered. We, therefore, cannot use that testimony for the purpose for which it was obviously intended by the parties: that is, to prove the sale of the lessor's interest to Loveland Properties (fourth event) and the renewal of the term of the lease (sixth event).

82

overruled the motion to dismiss filed by Ten Jays, Inc. and the Jenningses ("the appellants"). Later the court granted Loveland Properties' motion for summary judgment against them for the Jenkins rent (reserving for later decision the other claims). The three assignments of error presented by the appellants question the propriety of these rulings by the trial court, and because both rulings are supported by the identical documents, we will dispose of all three assignments simultaneously.

The appellants' arguments are as follows: the 1980 assignment was unenforceable because it was not executed in compliance with R.C. 5301.01 (the Statute of Conveyances); the subsequent events did not amount to part performance sufficient to remove the first assignment from the operation of the statute; the 1980 personal guaranty was also defective because (1) it did not comply with R.C. 5301.01, (2) the consideration supporting the guaranty failed by reason of the absence of any significance in the landlord's consent to the assignment (because the assignment was defective and unenforceable), and (3) the consideration supporting the guaranty, which was signed May 15, 1980, was legally insufficient since it was "past" consideration (the landlord had already bound itself to consent when it joined in the assignment of April 4, 1980). We find merit in only two of these arguments, the first and the last.

The 1980 assignment was defectively executed, clearly, but it was ratified and made enforceable against the assignees by two subsequent documents: (1) the 1983 Lease Addendum, which was fully executed under the Statute of Conveyances and contained the agreement that Loveland Properties was the assignee of Brown Realty, Inc., and that Ten Jays, Inc. was the assignee of H. E. Glass; and (2) the 1985 assignment to Jenkins, which was fully witnessed (although not notarized) and contained the covenants of Ten Jays, Inc. that the lease was genuine and in full force and effect and that Ten Jays, Inc. was entitled to assign the same. This ratification bound Ten Jays, Inc. to the agreement in the 1980 assignment "to fully perform all the terms and conditions of said Lease."[4] These documents did not bind Robert J. Jennings individually because he did not join in either of them.

What binds Robert J. Jennings individually to the lease (and Ten Jays, Inc., also) is part performance under the doctrine of *Delfino* v. *Paul Davies Chevrolet, Inc.* (1965), 2 Ohio St. 2d 282, 31 O.O. 2d 557, 209 N.E. 2d 194, paragraph four of the syllabus,[5] as implicitly followed in *Menke* v. *Tessel* (1969), 18 Ohio App. 2d 121, 47 O.O. 2d 184, 247 N.E. 2d 334. Part performance of an agreement (the lease) defectively executed under the Statute of Conveyances removes that agreement from the operation of the statute when four factors are present: (1) unequivocal acts by the party relying on

[4] It may also be argued that the doctrine of estoppel will prevent Ten Jays, Inc. from asserting that the lease was unenforceable against it.

[5] Paragraph four of the syllabus of *Delfino* v. *Paul Davies Chevrolet, Inc.*, *supra*, reads in full:
"Part performance to be sufficient to remove an agreement from the operation of the statute of conveyances (Section 5301.01, Revised Code) must consist of unequivocal acts by the party relying upon the agreement, which are exclusively referable to the agreement and which have changed his position to his detriment and make it impossible or impractical to place the parties *in statu quo.*"

the agreement (Loveland Properties in this case); (2) the acts are exclusively referable to the agreement; (3) the acts change the party's position to his detriment; and (4) the acts make it impossible to place the parties *in statu quo.* The unequivocal acts exclusively referable to the lease are the installation of the new combined heating and air-conditioning unit at the landlord's cost in part, the extension of credit to Ten Jays, Inc. (for its share of the cost), and the renewal of the lease for another five-year term. These acts changed Loveland Properties' position to its detriment because they caused an improvement to be made to the premises at its cost in part, additional credit to be advanced to Ten Jays, Inc., and an extension to be made to the term of the lease. These acts, further, made it impossible to put the parties back in their prior positions where Ten Jays, Inc. was a month-to-month tenant without adequate heating and air-conditioning, and Loveland Properties had not expended funds or extended either credit or the term of occupancy. In *Menke* v. *Tessel, supra,* we held that the addition of a room to the leased premises (by tearing out a wall and installing new vinyl flooring of a selected design) and the extension of the term at an increased rental were sufficient part performance to allow enforcement of a defectively executed second lease.

The Jenningses' personal guaranty of performance by Ten Jays, Inc. was properly executed, because a guaranty need not be either witnessed or notarized. It does not fall within the ambit of R.C. 5301.01 because it is not a "lease of any interest in real property," but an obligation of an entirely different nature. Simply stated, the guaranty is a special promise to answer for the "debt, default, or miscarriage of another," and under the Statute of Frauds (R.C. 1335.05), it

need only be in a writing and signed by the party or parties to be charged (the appellants in this case). The guaranty is "referable" to the lease, but it is neither a part of that lease nor a lease in its own right.

The consideration recited in the guaranty ("Brown Realty, Inc. consenting to the Assignment of the Lease between Brown Realty, Inc. as Landlord and H. E. Glass, Lessee") is sufficient to support the guaranty (because both the consent and the assignment are enforceable), provided, however, that the undertaking of the Jenningses (by signing the guaranty) and the consenting by Brown Realty, Inc. were concurrent acts given in exchange for each other. All we know from the record is that the guaranty recites Brown Realty's consent as its consideration and that the guaranty was signed one month and eleven days later. It is not clear on this record whether the consent had become binding on Brown Realty, Inc. before the guaranty was signed, or whether the consent was in fact intended by the parties to be given in exchange for the individual guaranty of the Jenningses as well as for the assumption by Ten-Jays, Inc. of the lessee's obligations under the lease.

Under Civ. R. 56(C), the evidence presented to support a summary judgment must be construed most strongly in favor of the party against whom the motion for summary judgment is made. The "evidence" includes all inferences that may reasonably be made from the facts directly demonstrated by the documents under scrutiny. Under this formula we must conclude that Brown Realty, Inc. had bound itself to the consent on April 4, 1980, and that the May 15, 1980 guaranty was an afterthought given for a past consideration. The truth may be that Brown Realty, Inc. would not have signed its consent without the Jen-

ningses' personal promise to guarantee performance, but that circumstance is not established in the record before us under Civ. R. 56(C).

There is a genuine issue of material fact in connection with the liability of Robert J. and Mary Jennings under the guaranty, and summary judgment for the unpaid rent was improper insofar as it was based on the enforceability of the guaranty. However, there are no genuine issues of material fact in connection with the liability of Ten Jays, Inc. and Robert J. Jennings under the 1980 assignment of the lease, and the summary judgment for unpaid rent was properly granted against those two appellants. The first assignment of error (contending the granting of "partial summary judgment" [that is, for rent only] to Loveland Properties was error) is sustained as to the judgment against Mary Jennings but overruled as to the judgment against Ten Jays, Inc. and Robert J. Jennings.

The second assignment of error contends that the summary judgment was erroneously "based upon a prior hearing and decision." Appellants appear to argue that the trial court referred back to its overruling of their motion to dismiss as the reason for granting Loveland Properties' motion for summary judgment. We hold that this contention is not supported by the record, the entry granting summary judgment reciting that it is grounded on consideration of the plaintiff's motion for summary judgment and the memoranda and arguments of counsel with respect to that motion. The second assignment of error is overruled.

The third assignment of error is also overruled. In it, appellants advance the argument that their motion to dismiss should have been granted. The test for review of a motion to dismiss under Civ. R. 12(B)(6) is whether the plaintiff can prove, under the allegations of the complaint, any set of facts entitling him to recover. *O'Brien* v. *Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St. 2d 242, 71 O.O. 2d 223, 327 N.E. 2d 753, syllabus, following *Conley* v. *Gibson* (1957), 355 U.S. 41. This is an entirely different test from that applied under a motion for summary judgment because the material allegations of the complaint are taken as admitted. Thus the defect in plaintiff's claim under the personal guaranty (whether the consideration was legally insufficient) is cured by the allegations of the complaint because the complaint asserts that the guaranty was valid and enforceable.

The judgment rendered on March 17, 1987 is reversed insofar as it orders recovery of $9,440 (as past due rent) against Mary D. Jennings, but affirmed insofar as it orders recovery of that sum against Ten Jays, Inc. and Robert J. Jennings jointly and severally. The judgment rendered September 15, 1987, awarding recovery against all three appellants of $1,866.26 for unpaid utilities and maintenance obligations, among other matters, is not affected by this judgment on appeal. The case is remanded to the trial court solely with respect to the liability of Mary D. Jennings under the 1980 guaranty.

*Judgment accordingly.*

SHANNON, P.J., BLACK and KLUSMEIER, JJ., concur.