OPINION JUDGMENT ENTRY
{¶ 1} Defendant-appellant David Fischbach ("Fischbach") appeals the October 2, 2002, December 9, 2002 and July 25, 2003 Judgment Entries of the Licking County Court of Common Pleas.
{¶ 2} Appellees are plaintiff Kilcoyne Properties, LLC ("Kilcoyne") and defendant/cross-claimant John Maberry ("Maberry").
{¶ 3} Kilcoyne Properties, LLC is also cross-appellant in this matter.
 STATEMENT OF THE FACTS AND CASE
{¶ 4} On June 28, 1995, David Fischbach and Ken Little entered into a lease agreement involving commercial property located at 8282 National Road, SW, rear, Pataskala, Ohio. The term of the lease was five years and provided Fischbach with a five year renewal option at the end of the original term. Prior to the expiration of the original lease term, on July 24, 1998, Little sold the property to Kilcoyne Properties, LLC.
{¶ 5} Fischbach negotiated a new lease agreement with Kilcoyne to maintain his auto restoration business on the commercial premises. The new lease agreement provided for an initial term of two years with an option to renew for an additional five years. The parties executed this agreement on July 31, 1998. Although the lease permitted Fischbach to sublease the premises, the agreement provided the lease would become null and void if Fischbach ever decided to sell the business.
{¶ 6} Shortly thereafter, Fischbach hired real estate agent Robin Long to list the business for sale or lease. On December 24, 1998, Fischbach entered into a sublease with John Maberry, who was doing business as Aftercrash Collision Repair, for a three year term with an option to renew for an additional three years. The initial rent amount of the sublease was $1,050/month with payments due on the first of each month. The sublease provided the rent amount would increase in $50 increments every six months, but the total rent due would not exceed $1,250/month for the first three years. If Maberry renewed the lease for an additional three years, the sublease provided the rent rate would not exceed "two-hundred and fifty dollars from the end of the first year lease term." Maberry and Fischbach dispute the meaning of this language.
{¶ 7} In a letter dated July 12, 2000, Fischbach advised Kilcoyne of his desire to exercise his option to renew the lease with Kilcoyne for an additional five years. Kilcoyne refused to recognize the renewal notice. Kilcoyne filed a declaratory judgment action in the Licking County Court of Common Pleas on October 9, 2000, seeking a declaration of the rights and obligations of Kilcoyne and Fischbach under the lease agreement. Kilcoyne filed its first amended complaint on December 11, 2002, adding Maberry as a defendant. Maberry filed a timely answer to the amended complaint and a cross-claim against Fischbach. Maberry requested the trial court permit him to deposit the rents due under the sublease into an escrow account with the Clerk of Courts. Via Judgment Entry filed February 22, 2001, the trial court ordered Maberry to deposit all future rent payments relative to the sublease into the court. During the pendency of the matter, Maberry deposited $4,600 with the court.
{¶ 8} The matter came on for hearing before the magistrate on March 11, 2002. The magistrate issued her Decision with Findings of Fact and Conclusions of Law on March 29, 2002. The parties filed separate objections to the magistrate's decision. Via Memorandum of Decision and Judgment Entry filed October 2, 2002, the trial court overruled all the objections and affirmed the magistrate's decision.
{¶ 9} In a prior appeal of the trial court's October 2, 2002, judgment entry, this Court held that the trial court found Maberry had paid Fischbach $45,706.50 in rent, but Maberry only owed $44,450 in rent under the terms of the lease. The trial court ordered Fischbach to return the overpayment of $1,256.50 to Maberry. The $45,706.50 figure calculated by the trial court included $4,600 in monies deposited with the Clerk of Courts. The trial court did not, however, make any ruling relative to the distribution of those escrowed funds. As a result, we found the trial court's October 2, 2002 Memorandum of Decision and Judgment Entry did not constitute a final appealable order.
{¶ 10} In April, 2002, after the Magistrate's Decision but prior to the Trial Court's decision, Maberry filed a "Notice" stating that he would be filing a newly monthly rent of $250 with the Clerk of Courts.
{¶ 11} In response to said "Notice", Fischbach filed a Notice to Strike and For a Finding in Contempt.
{¶ 12} Maberry then filed a Motion for Sanctions.
{¶ 13} On December 9, 2002, the trial court issued a decision denying the Motion to Strike and For Contempt and also denied the Motion for Sanctions.
{¶ 14} On July 25, 2003, the trial court ordered Kilcoyne to pay back to the Clerk the sum of $1,650.00, which represented an overpayment by the Clerk; and ordered that $1,256.50 be released to Maberry, with the remainder of any funds on deposit to be returned to Fischbach, but then stayed the entire matter.
{¶ 15} It is from the judgment entries of October 2, 2002, December 9, 2002, and July 25, 2003, Fischbach appeals, raising the following assignments of error:
 ASSIGNMENTS OF ERROR Appellant David Fischbach
{¶ 16} "I. Trial court erred to the prejudice of defendant-appellant Fischbach when it concluded as a matter of law that "the lease between Mr. Little and defendant Fischbach is not relevant to the issues before the court, and need not be discussed further."
{¶ 17} "II. The trial court erred to the prejudice of defendant-appellant Fischbach when it concluded as a matter of law that "the lease between plaintiff and defendant Fischbach is invalid because it does not comply with R.C. 5301.01."
{¶ 18} "III. The trial court erred to the prejudice of defendant-appellant Fischbach when it concluded as a matter of law that "a month to month tenancy was created" as a result of the defectively executed lease between plaintiff-appellee Kilcoyne Properties, LLC and defendant-appellant Fischbach.
{¶ 19} "IV. The trial court erred to the prejudice of defendant-appellant Fischbach when it concluded as a matter of law that "the doctrine of part performance is not available to remove the lease agreement from the statute of conveyances."
{¶ 20} "V. The trial court erred to the prejudice of defendant-appellant Fischbach when it concluded as a matter of law that "defendant Fischbach's failure to provide a copy of his insurance certificate does constitute a breach of the lease."
{¶ 21} "VI. The trial court erred to the prejudice of defendant-appellant Fischbach when it concluded as a matter of law that "defendant Fischbach lost his right to exercise his option to renew the lease for five years" once the trial court determined that the lease agreement was converted to a month to month tenancy.
{¶ 22} "VII. The trial court erred to the prejudice of defendant-appellant Fischbach when it concluded as a matter of law that "the sublease between defendant Fischbach and defendant maberry was improperly executed under R.C. 5301.0l." and therefore invalid.
{¶ 23} "VIII. The trial court erred to the prejudice of defendant-appellant Fischbach when it concluded as a matter of law that "defendant Maberry did not breach the lease by paying an improper amount of rent under the sublease."
{¶ 24} "IX. The trial court erred to the prejudice of defendant-appellant Fischbach when it concluded that "the rent for the months of January, February, and March for 2002, was due in the amount of $250.00 per month."
{¶ 25} "X. The trial court erred to the prejudice of defendant-appellant Fischbach when it overruled his motion to strike and for a finding in contempt, and failed to order defendant-appellee Maberry to pay monthly rent into court."
 Cross-Appellant Kilcoyne Properties, LLC
{¶ 26} "I. The trial court erred in determining that the lease agreement between Fischbach and kilcoyne was not void as the result of Fischbach's decision to sell the business.
{¶ 27} "II. The trial court erred in ordering Kilcoyne Properties, LLC to pay back $1,650.00 to the clerk of courts."
 I.
{¶ 28} In his first assignment of error, Appellant argues that the trial court erred in finding that the original lease between Ken Little and appellant was not relevant to the instant case. We disagree.
{¶ 29} Appellant argues that since Kilcoyne bought the property from Little subject to the lease, such lease is relevant to the issues in this case.
{¶ 30} The trial court found the only lease relevant to the case sub judice was the one between Kilcoyne and Appellant Fischbach, which did not incorporate any of the terms from the lease with Little, although it appears to be substantially similar.
{¶ 31} We agree with the trial court. Once Appellant executed a new lease with Kilcoyne, such lease replaced the previous lease. Therefore, the lease with Little is not controlling or relevant to the case at bar.
{¶ 32} Appellant's first assignment of error is overruled.
 II.
{¶ 33} In his second assignment of error, Appellant argues that the trial court erred in finding that the lease between Appellant and Kilcoyne was not in compliance with R.C. § 5301.01 and was therefore invalid. We disagree.
{¶ 34} The statute of conveyances, contained in Revised Code §5301.01, provides:
{¶ 35} "A deed, mortgage, land contract as referred to in division (B)(2) of section 317.08 of the Revised Code, or lease of any interest in real property must be signed by the grantor, mortgagor, vendor, or lessor, and such signing must be acknowledged by the grantor, mortgagor, vendor, or lessor in the presence of two witnesses, who shall attest the signing and subscribe their names to the attestation. Such signing must be acknowledged by the grantor, mortgagor, vendor, or lessor before a judge of a court of record in this state or a clerk thereof, a county auditor, county engineer, notary public, mayor, or county court judge, who shall certify the acknowledgment and subscribe his name to the certificate of such acknowledgment."
{¶ 36} The lease in this case was signed by both parties but was not witnessed or acknowledged as required by the statute. The lease was therefore improperly executed and was invalid.
{¶ 37} Appellant's second assignment of error is overruled.
 III.
{¶ 38} In his third assignment of error, Appellant argues that the trial court erred in concluding that a month to month tenancy was created as a result of the invalid lease. We disagree.
{¶ 39} If a trial court determines that no lease exists, then it must determine the terms of the resulting tenancy.
{¶ 40} It is well settled that where a purported lessee takes possession under a defectively-executed lease and pays rent, a tenancy will be implied and is subject to all of the terms of the purported lease except duration. See Baltimore Ohio RailroadCo. v. West (1897), 57 Ohio St. 161. The duration of the term is determinable by the provisions for payment of rent, so a lease providing for annual rent creates a tenancy from year to year, whereas a lease providing for monthly rent creates a tenancy from month to month. See Wineburgh v. Toledo Corporation (1932),125 Ohio St. 219, 222.
{¶ 41} In Delfino v. Paul Davies Chevrolet, Inc. (1965),2 Ohio St.2d 282, the Ohio supreme Court cited Wineburgh v. ToledoCorp. (1932), 125 Ohio St. 219, paragraph one of the syllabus:
{¶ 42} "A defectively executed lease for a term of five years upon monthly rental creates a tenancy in the lessee from month to month: and where the tenant occupying under such lease vacates the premises at the end of a month, after fully prepaying the rentals then due, he is not liable to the lessor for the rental installments accruing after such vacation, in an action at law based upon such defectively executed lease." Delfino, at 285.
{¶ 43} As stated previously, the instrument in this case does not comply with the mandatory provisions of R.C. § 5301.01. Pursuant to the lease, rent was to be paid in monthly installments. This Court therefore finds pursuant to Delfino,supra, that the defectively executed lease created a monthly rental agreement on a month-to-month tenancy.
{¶ 44} Appellant's third assignment of error is overruled.
 IV.
{¶ 45} In his fourth assignment if error, Appellant argues that the trial court erred in finding that the equitable doctrine of part performance did not remove the lease from the statute of conveyances. We disagree.
{¶ 46} The doctrine of part performance is based in equity. It is utilized where it would be inequitable to permit the statute to operate.
{¶ 47} The question of whether partial performance should apply to take a defectively executed agreement out of the Statute of Conveyances is determined by the facts of each particular case.
{¶ 48} In Delfino, supra, the issue before the Ohio Supreme Court was whether a defectively executed five year commercial lease could be enforced for the full five years. The court found that part performance could remove a defectively executed written lease from the operation of the Statute of Conveyances when there exists:
{¶ 49} "[U]nequivocal acts by the party relying upon the agreement, which are exclusively referable to the agreement and which have changed his position to his detriment and which make it impractical or impossible to place the parties in statusquo."
{¶ 50} Appellate courts follow Delfino, supra, in applying the doctrine of part performance to cases involving the Statute of Conveyances. Loveland Properties v. Ten Jays, Inc. (1988),57 Ohio App.3d 79, 567 N.E.2d 270; Menke v. Tessel (1969),18 Ohio App.2d 121, 247 N.E.2d 334; Walter C. Pressing Co. v.Hogan (1954), 99 Ohio App. 319, 133 N.E.2d 419; Siggs v. SubwaySandwich Shops (July 23, 1997), Defiance App. No. 4-97-12, unreported; Upper Krust South, Inc. v. School EmployeesRetirement Bd. of Ohio (Mar. 29, 1996), Montgomery App. Nos. 15349, 15399, unreported. Thus, the doctrine was applicable in this case.
{¶ 51} Appellant argues that the defectively executed lease should be validated through the doctrine of part performance because appellant changed his position to his detriment by entering into a sublease with Maberry.
{¶ 52} Based on the record before us, we find no error in the trial court's refusal to apply the doctrine of part performance to the case sub judice. While the record indicates that Appellant's unequivocal act of subleasing the premises, such act was in fact a benefit, not a detriment to appellant. That is, appellant benefited from the sublease payments because such amount was substantially more than his lease payment to Kilcoyne. Additionally, all improvements and substantial alterations to the subject property were performed under the prior lease with Little, before Appellant entered into this lease with Kilcoyne, and that lease provided that Appellant could remove his improvements upon expiration of the lease.
{¶ 53} Appellant's fourth assignment of error is overruled.
 V.
{¶ 54} In his fifth assignment of error, Appellant argues that the trial court erred in finding that Appellant breached his lease with Kilcoyne by failing to provide Kilcoyne with a copy of his insurance certificate. We disagree.
{¶ 55} The lease provided:
{¶ 56} "Lessor will maintain insurance on the building and premises. Lessee shall obtain liability insurance and insurance on the contents of the building, a copy of lessee's insurance certificate must be provided to Kilcoyne Properties LLC."
{¶ 57} Appellant concedes that he did not provide a copy of such liability insurance certificate to Appellee but argues that such alleged breach was caused by Appellee Maberry.
{¶ 58} The trial court found that such language was clear and unambiguous. The trial court further found that the sublease between Appellant and Appellee Maberry did not require Maberry to provide a copy his liability insurance certificate to Appellant or Appellee Kilcoyne. Furthermore, Appellant's lease with Appellee Kilcoyne provided that he "assumes responsibility for a sub lessee's failure to comply with the terms of this lease agreement."
{¶ 59} Having found that Appellant breached this lease provision, the trial court went on to find that such breach was not material because no harm resulted from such failure on Appellant's part to provide the certificate of insurance to Appellee Kilcoyne and because Appellee Mayberry did at all times carry the necessary insurance. The trial court found however, that Appellee Kilcoyne would be entitled to damages flowing from such breach but that it had failed to demonstrate that any damages were sustained from such.
{¶ 60} Based on the foregoing, we cannot say that the trial court erred in finding that Appellant breached his lease with Appellee Kilcoyne.
{¶ 61} Appellant's fifth assignment of error is overruled.
 VI.
{¶ 62} In his sixth assignment of error, Appellant argues that the trial court erred in finding that Appellant could not exercise his option to renew under the lease. We disagree.
{¶ 63} As stated above, the trial court found that the lease in the instant case was invalid and that the agreement between the parties created only a month-to-month tenancy. As such, the tenancy became terminable by either party upon thirty days notice. To allow a month-to-month tenancy, or any lease agreement for less than three years, to provide for a renewal option past the years would defeat the purposes of the Statute of Conveyances.
{¶ 64} We therefore find that the trial court did not err in finding that the conversion of the lease agreement to a month-to-month tenancy extinguished Appellant's renewal option.
{¶ 65} Appellant's sixth assignment of error is overruled.
 VII.
{¶ 66} In his seventh assignment of error, Appellant argues that the trial court erred in concluding that the sublease between Appellant Maberry was invalid pursuant to R.C. § 5301.01. We disagree.
{¶ 67} For the same reasons as those contained in Assignment of Error II, we find that the trial court did not err in finding the sublease invalid.
{¶ 68} Appellant's seventh assignment of error is overruled.
 VIII., IX
{¶ 69} In his eighth and ninth assignments of error, Appellant argues that the trial court erred in concluding that Appellee Maberry did not breach the sublease by paying an improper amount of rent and also in concluding that the rental amount due for January, February and March of 2002 was $250.00 per month. We agree.
{¶ 70} The rental terms contained in the sublease were as follows:
{¶ 71} "Rent will be made on monthly installments of one thousand fifty dollars payable the first of each month for that month.
{¶ 72} "At the end of the three year term, Lessee will have the first option to renew the agreement for an additional three years for a rate not to exceed two hundred fifty dollars from the end of the first three year lease term.
{¶ 73} "Lease amount will increase in fifty dollar increments every six months with the amount not to exceed twelve hundred and fifty dollars for the first three years."
{¶ 74} The trial court calculated the rent as follows:
{¶ 75} "Jan. — Jun. 1999 ($1,050.00 x 6) = $6,300.00
{¶ 76} "Jul. — Dec. 1999 ($1,100.00 x 6) = $6,600.00
{¶ 77} "Jan. — Jun. 2000 ($1,150.00 x 6) = $6,900.00
{¶ 78} "Jul. — Dec. 2000 ($1,200.00 x 6) = $7,200.00
{¶ 79} "Jan. — Jun. 2001 ($1,250.00 x 6) = $7,500.00
{¶ 80} "Jul. — Dec. 2001 ($1,250.00 x 6) = $7,500.00
{¶ 81} "Jan. — Mar. 2002 ($250.00 x 3) = $750.00
{¶ 82} "Last month's rent as listed in sublease $1,200.00
{¶ 83} "Security deposit $500.00
{¶ 84} "Total: $44,450.00"
{¶ 85} The trial then went on to find, based on canceled checks, transfer receipts and bank receipts submitted into evidence, in addition to the $4,600.00 deposited with the Clerk, that Appellee Maberry had paid a total of $45,706.50 to Appellant Fischbach.
{¶ 86} With regard to late fees, the trial court found that Appellant Fischbach's practice of accepting late payments along with his failure to produce proof of which payments were more than five days late to trigger such late fees, constituted a waiver of any late fees.
{¶ 87} The trial court then ordered Appellant Fischbach to return $1,256.00 overpayment to Appellee Maberry.
{¶ 88} In construing the rental rate for January, February and March of 2002, the trial court reasoned that the renewal option language stated "a rate not to exceed two hundred and fifty dollar from the end of the first three year term" not ". . . from the end of the first three year lease term rate". The trial court found that rent is an essential term and that the "meaning was not altered by a construction of the agreement as a whole."
{¶ 89} Upon review, we find that the trial court erred in its calculation of rent at a rate of $250.00 per month for the months of January, February and March of 2002. We find that in reviewing the lease agreement as a whole and the incremental rate schedule contained in the lease agreement for the first three years, it defies reason to believe that the parties intended for rent, which began at $1,050.00 per month and increased at regular intervals to $1,250.00 per month, would all of sudden decrease to $250.00 per month for the renewal period.
{¶ 90} A review of the rate schedule for the first three years shows that the rent increased, in fifty dollar increments, two hundred dollars from the initial rate to the rate at which the increases stopped per the agreement. It is a logical progression of this rate schedule that the new renewal rental rate would increase up to but no more than $250.00 from the rate which the sub-lessee would have been paying at the end of the first three year term.
{¶ 91} We find that the trial court erred in construing the renewal option rate to be $250.00 per month and therefore miscalculated the amount of rent owed by Maberry to Fischbach for those first three months in 2002. The rent for those three months should have been calculated at a monthly rate of between $1,250.00 and $1,500.00. We find that because a new increased rate was never established between the parties, the rental rate should be calculated at the $1,250.00 rate for those three months. At this rate, Appellee Maberry owed Appellant Fischbach $3,750.00 for those three months, bringing the total to $53,450.00, rather than $44,450.00. As such, we find that Appellee Maberry owes $8,743.50 in rent ($53,450.00-$44,706.50 paid = $8,743.50). Appellee Maberry therefore breached his lease with Appellant Fischbach by paying an improper amount of rent.
{¶ 92} Appellant's eighth and ninth assignments of error are sustained.
 X.
{¶ 93} In his tenth assignment of error, Appellant argues that the trial court erred in overruling his motion to strike and for a finding in contempt and failed to order Appellee Maberry to pay monthly rent into court. We disagree.
{¶ 94} An appellate court reviews a trial court's decision on contempt proceedings under an abuse of discretion standard.State ex rel. Ventrone v. Birkel (1981), 65 Ohio St.2d 10, 11,417 N.E.2d 1249. An abuse of discretion consists of more than error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. Statev. Lessin (1993), 67 Ohio St.3d 487, 494, 620 N.E.2d 72; Rockv. Cabral (1993), 67 Ohio St.3d 108, 112, 616 N.E.2d 218. When applying the abuse of discretion standard of review, we are not free to merely substitute our judgment for that of the trial court. In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 137-138,566 N.E.2d 1181, citing Berk v. Matthews (1990), 53 Ohio St.3d 161,169, 559 N.E.2d 1301.
{¶ 95} We must look at the totality of the circumstances in the case sub judice, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably. However, the trial court's findings upon which it predicates its decision are reviewed under a manifest weight of the evidence standard. A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court.
{¶ 96} Contempt is a disregard of, or disobedience to, an order or command of judicial authority. State v. Flinn (1982),7 Ohio App.3d 294, 295, 455 N.E.2d 691. In Wolfe v. Wolfe (July 30, 1998), Scioto App. No. 97CA2526, the Fourth District Court of Appeals stated:
{¶ 97} "The authority and proper functioning of the court are the primary interests involved in a contempt proceeding and, therefore, great reliance should be placed on the discretion of the trial court judge. See Denovchek v. Bd. of Trumbull Cty.Commrs. (1988), 36 Ohio St.3d 14, 16, 520 N.E.2d 1362. To that end, numerous appellate districts have held that trial courts may decline to hold a party in contempt notwithstanding abundant and uncontroverted evidence that a court order has been violated. See, e.g., Nielsen v. Meeker (1996), 112 Ohio App.3d 448, 452,679 N.E.2d 28; Lentz v. Lentz (1924), 19 Ohio App. 329, 334;Clark v. Clark (Apr. 19, 1993), Preble App. No. CA92-01-001;Bardenhagen v. Bardenhagen (Aug. 27, 1990), Clermont App. No. CA90-01-009. The same position has also been adopted by the Fourth District Court of Appeals. See, e.g., In re Skinner
(Mar. 23, 1994), Adams App. No. 93CA547; Shafer v. Shafer (Nov. 31, 1993), Washington App. No. 93CA16."
{¶ 98} Thus, even if abundant and uncontroverted evidence establishes that a person disobeyed the court's order, a trial court is not required to enter a contempt finding. Rather, the matter is entrusted to the trial court's own discretion.
{¶ 99} After our review of the record in the case sub judice, we find no abuse of discretion committed by the trial court. We find that the trial court's judgment is not unreasonable, unconscionable or arbitrary.
{¶ 100} Accordingly, based upon the foregoing reasons, we overrule appellant's tenth assignment of error.
 Cross-Appeal I.
{¶ 101} In his first assignment of error, Cross-Appellant Kilcoyne argues that the trial court erred in finding that the lease agreement between Kilcoyne and Fischbach was not void as a result of Fischbach's decision to sell his business. We disagree.
{¶ 102} The lease between Kilcoyne and Fischbach provided:
{¶ 103} "This lease shall become null and void if lessee decides to sell the business . . . but purchaser will have first option to sign a new lease, terms to be negotiated at time of sale. Lease price will not exceed current lease value for similar property in the vicinity at the time of sale."
{¶ 104} Cross-Appellee Fischbach entered into a listing contract with a realtor to sell his business. At some point in time, Fischbach changed his mind and did not in fact sell his business. Cross-Appellant Kilcoyne argues that since he "decided" to sell, such decision on his part voided the lease.
{¶ 105} We find a better construction of this provision is the one adopted by the trial court, finding that a sale must actually occur for the lease to become null and void. The second sentence referring to the new purchaser having the first option to sign a new lease supports this interpretation.
{¶ 106} We therefore find that the trial court did not err in finding that the lease was not void as a result of Fischbach's attempt to sell.
{¶ 107} Cross-Appellant's first assignment of error is overruled.
 II.
{¶ 108} In his second assignment of error, Cross-Appellant argues that the trial court erred when it ordered Kilcoyne to pay back $1,650.00 to the Clerk of Courts. We disagree.
{¶ 109} The trial court's order of April 4, 2001, to the Clerk stated:
{¶ 110} "[E]quity will result by allowing the release of funds from the amount deposited by Defendant Maberry to the Plaintiff in the amount due Plaintiff from Defendant Fischbach.
{¶ 111} "Accordingly, the Court orders the Clerk to release, monthly, the amount of rent due from Defendant Fischbach to the Plaintiff, by releasing that amount from the monthly rent deposited with the Court by Defendant Maberry. The amount to be released to the Plaintiff is $550.00."
{¶ 112} Based on the above, we agree with the trial court's finding that Kilcoyne should have only received its disbursements of $550.00 from the funds deposited by Maberry. When Maberry stopped making monthly deposits with the Clerk, disbursements to Kilcoyne should have also stopped. Kilcoyne was therefore overpaid by three months and the trial court did not err in ordering Kilcoyne to repay said amount to the Clerk.
{¶ 113} Cross-Appellant's second assignment of error is overruled.
{¶ 114} The decision of the Licking County Court of Common Pleas is affirmed in part and reversed in part and remanded for proceedings consistent with this opinion.
Boggins, J., Wise, P.J. and Edwards, J., concur.
For the reasons stated in our accompanying Memorandum-Opinion, this judgment of the Licking County Court of Common Pleas is affirmed in part and reversed in part and remanded. Costs assessed equally to appellant and cross-appellant.