[Cite as *Hamilton v. Barth*, 2022-Ohio-3451.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| FRED B. HAMILTON, | : | APPEAL NO. C-210605 |
| | | TRIAL NO. A-1805754 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| DOROTHY M. BARTH, the Executrix of | : | |
| the Estate of Louis E. Barth, | | |
| and | : | |
| DOROTHY F. BARTH, | : | |
| Defendants-Appellees.[1] | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: September 30, 2022

*Nieberding & Nieberding Co. LPA* and *James L. Nieberding*, for Plaintiff-Appellant,

*Donald J. Meyer, Jr., Co. LPA* and *Donald J. Meyer, Jr.*, for Defendants-Appellees.

---

[1] We note that the difference in middle initial for Dorothy Barth is in accordance with the record. *See* fn. 2.

**ZAYAS, Presiding Judge.**

{¶1}    Plaintiff-appellant Fred B. Hamilton brings this appeal to challenge the trial court's grant of summary judgment on the claims in his complaint in favor of defendants-appellees Dorothy M. Barth, the executrix of the estate of Louis E. Barth, and Dorothy F. Barth ("defendants").   For the following reasons, we affirm the judgment of the trial court.

## I. Procedural History

{¶2}    Hamilton filed this action for breach of contract, specific performance, and a declaratory judgment on October 23, 2018, regarding an alleged land installment contract.[2]   On November 21, 2018, defendants filed an answer and a counterclaim against Hamilton for slander of title based on an affidavit filed by Hamilton in the county recorder's office asserting that Hamilton had an interest in the subject property by virtue of the alleged land contract.

{¶3}    On September 18, 2019, defendants moved for summary judgment on Hamilton's claims, arguing that the purported contract was unenforceable as it failed to meet the minimum requirements for a land installment contract under R.C. 5313.02.   Hamilton opposed summary judgment, asserting that genuine issues of material fact remained as to whether the contract was enforceable as it substantially complied with the requirements of R.C. 5313.02.   The trial court ultimately granted defendants' motion for summary judgment on December 27, 2019, after finding that all parties had acknowledged that the document was never notarized as required by R.C. 5301.01(A).   Hamilton appealed the trial court's grant of summary judgment.

---

[2] The defendants listed at the time of the complaint were Louis E. Barth and Dorothy "F." Barth ("The Barths").  Subsequently, Andrew L. Barth, the guardian of Louis E. Barth, was substituted for Louis E. Barth on November 14, 2018, after Louis Barth was declared incompetent by the probate court, and then Dorothy "M." Barth, the Executrix of the Estate of Louis E. Barth, was substituted for Andrew L. Barth on May 6, 2021, after the death of Louis Barth.

This court dismissed the appeal for lack of a final, appealable order as the trial court's entry did not dispose of the defendants' counterclaim and did not contain the requisite language under Civ.R. 54(B). *See Hamilton v. Barth*, 1st Dist. Hamilton No. C-200027, 2021-Ohio-601.

{¶4} On remand, defendants filed a motion for summary judgment on the counterclaim. After responsive briefing, the trial court granted defendants' request for summary judgment on the counterclaim. Hamilton timely appealed. He now raises a sole assignment of error that the trial court erred in granting summary judgment in favor of defendants on the claims in his complaint. He does not present any argument that the trial court erred in granting summary judgment in favor of defendants on their counterclaim.

## II. Factual Background

{¶5} This dispute centers around two parcels of land owned by the Barths in Hamilton County and collectively valued by the Hamilton County Auditor at over $450,000. In April 2018, Hamilton approached the Barths about purchasing the land, although they did not have any land for sale at the time. After some discussion about the terms of the sale, Hamilton had an attorney draft a land contract for the property. The Barths did not participate in the preparation of this document.

{¶6} Hamilton approached the Barths with the contract in early May. The contract, entitled "LAND CONTRACT," listed a purchase price of $55,000. The terms of payment were: (1) a down payment of $500 upon execution of the contract, (2) $500 monthly installment payments beginning on June 7, 2018, and continuing until May 7, 2025, and (3) a final payment of the unpaid balance of $13,000 on May 7, 2025. The contract listed a rate of zero percent interest per annum.

{¶7} The Barths and Hamilton signed the contract, but it was never acknowledged or recorded and, significantly, it was never dated. All lines in the contract regarding witnesses, notaries, and dates were left blank. Hamilton presented the Barths with a check for $500 on the day of signing. The receipt for this payment indicated that the payment was for "land." The receipt was signed by Louis Barth and was dated May 5, 2018.

{¶8} On May 13, 2018, Dorothy Barth had a conversation with her son, Andrew Barth, about the contract. Andrew asked why she would consider selling the property at such a low price and she responded that she was not yet obligated to sell the land as she had not gone to the bank to have the contract notarized as the contract required. She decided at this point not to sell the land and called Hamilton the next day to tell him that she did not want to sell the land as they were being cheated. Hamilton came to the Barths' home and accepted a $500 check for the return of his payment on May 18, 2018.

{¶9} Subsequently, in June 2018, the parties, through their attorneys, disputed whether the contract was enforceable, without resolution. During these discussions, Hamilton attempted to tender a second payment to the Barths under the contract on June 15, 2018, but the check was returned to Hamilton. Hamilton did not attempt to tender any additional payments under the contract. On July 9, 2018, Hamilton filed an affidavit in the county recorder's office titled "Affidavit of Facts relating to Title to Real Property," asserting that he was establishing and preserving his interest in the property pursuant to the purported land contract.

### III. Law and Analysis

### A. Standard of Review

{¶10} We review the trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) when viewing the evidence in favor of the nonmoving party, reasonable minds can only reach one conclusion and that conclusion is adverse to the nonmoving party. *Id.*

### B. Land Installment Contracts and R.C. 5313.02

{¶11} A land installment contract is "an executory agreement which by its terms is not required to be fully performed by one or more of the parties to the agreement within one year of the date of the agreement and under which the vendor agrees to convey title in real property located in this state to the vendee and vendee agrees to pay the purchase price in installment payments, while the vendor retains title to the property as security for the vendee's obligations." R.C. 5313.01. The minimum provisions and requirements for a land installment contract are set forth in R.C. 5313.02. The statute lists 16 minimum provisions that a land installment contract must contain, requires the vendor to record the land installment contract within 20 days of the contract being signed, and requires that every land installment contract must conform to the same formalities required by law for the execution of deeds and mortgages. R.C. 5313.02(A), (C) and (D). One such formality is that the vendor's signing of a land installment contract must be acknowledged by the vendor before a judge or clerk of a court of record, or a county auditor, county engineer, notary public, or mayor. *See* R.C. 5301.01(A).

5

{¶12} It is undisputed in this case that the contract at issue was never acknowledged as required by R.C. 5313.02(D) and 5301.01(A). The trial court found this fact to be determinative and granted summary judgment in favor of the defendants on Hamilton's complaint. Hamilton now challenges the trial court's judgment and argues that genuine issues of material fact remained as to whether a contract existed between the parties, despite no acknowledgment, as the contract complied with the statute of frauds and substantially complied with R.C. 5313.02(A).

{¶13} "If a formality is strictly required by law for the execution or content of an instrument, the failure to adhere to that requirement renders the instrument unenforceable at law irrespective of the intent of the parties." *Bank of N.Y. Mellon v. Rhiel*, 155 Ohio St.3d 558, 2018-Ohio-5087, 122 N.E.3d 1219, ¶ 14, citing *Delfino v. Paul Davies Chevrolet, Inc.*, 2 Ohio St.2d 282, 285-286, 209 N.E.2d 194 (1965). The express requirements for a land contract under R.C. 5313.02 and the requirement under R.C. 5301.01—the statute of conveyances—that a land installment contract be acknowledged are clearly formalities required by law to create a valid land installment contract. *See* R.C. 5313.02; *Delfino* at 284; *Lovejoy v. Diel*, 12th Dist. Butler No. CA2020-06-067, 2021-Ohio-1124, ¶ 33. Additionally, as a land installment contract is an agreement for the sale of land, it must also comply with R.C. 1335.05—the statute of frauds—which requires that the agreement be in writing and signed by the party to be charged.

{¶14} However, the Ohio Supreme Court has said that, in certain circumstances, the equitable doctrine of part performance may remove an instrument from the operation of the statute of conveyances or the statute of frauds. *Delfino* at 286-287. The doctrine is applied "in situations where it would be inequitable to permit the statute to operate and where the acts done sufficiently establish the alleged

agreement to provide a safeguard against fraud in lieu of the statutory requirements." *Id.* For an agreement to be removed from the operation of the statute of conveyances, the part performance "must consist of unequivocal acts by the party relying upon the agreement, which are exclusively referable to the agreement and which have changed his [or her] position to his [or her] detriment and make it impossible or impractical to place the parties *in statu quo.*" *Id.* at 287; *see Loveland Properties v. Ten Jays, Inc.*, 57 Ohio App.3d 79, 82-83, 567 N.E.2d 270 (1st Dist.1988). "If the performance can reasonably be accounted for in any other manner or if the plaintiff has not altered his position in reliance on the agreement, the case remains within the operation of the statute." *Id.*

{¶15} In the context of land installment contracts, courts have held that an agreement which is invalid under R.C. 5313.02 may still be equitably enforced as between the parties thereto where there is substantial compliance with R.C. 5313.02 *and* where both parties performed under the contract in such a manner that it sufficiently evidenced an intent to enter into a final binding agreement. *See, e.g., Shimko v. Marks*, 91 Ohio App.3d 458, 632 N.E.2d 990 (5th Dist.1993); *Real Flo Properties v. Kelly*, 6th Dist. Lucas No. L-99-1099, 1999 Ohio App. LEXIS 6030 (Dec. 17, 1999); *Gollihue v. Russo*, 152 Ohio App.3d 710, 2003-Ohio-2663, 789 N.E.2d 1151 (10th Dist.); *Phillips v. May*, 11th Dist. Geauga No. 2003-G-2520, 2004-Ohio-5942; *Merivale Invests. v. Tuggle*, 6th Dist. Lucas No. L-08-1439, 2009-Ohio-6502; *Elkins v. Colburn*, 4th Dist. Pike No. 18CA893, 2019-Ohio-2681; *compare, e.g., Clagg v. Cooke*, 4th Dist. Pickaway No. 88 CA 23, 1989 Ohio App. LEXIS 3280 (Aug. 18, 1989) (finding an agreement unenforceable where the agreement failed to comply with the requirements of R.C. 5313.02 and the performance was insufficient to invoke the doctrine of partial performance); *Standard Fed. v. Asencio*, 9th Dist. Lorain No.

98CA007011, 1999 Ohio App. LEXIS 398 (Feb. 9, 1999) (finding that material omissions of the requirements of R.C. 5313.02 to the detriment of the vendee renders the agreement voidable).

{¶16} Notably, the facts of each case involved, at a minimum, the vendee being in possession of the premises and making payments under the agreement. However, possession and monthly payments, alone, are usually insufficient to constitute part performance. *See 6610 Cummings Court, L.L.C. v. Scott*, 2018-Ohio-4870, 125 N.E.3d 362, ¶ 42 (8th Dist.). The idea behind these cases is that, although the agreement may have been defectively executed and thus unenforceable in an action at law, the parties did enter into a final agreement and perform under the agreement in such a manner that it is clear what the agreement was between the parties and that the parties intended to be bound by such an agreement, and therefore the contract should be equitably enforced as between the parties thereto.

### B. Lack of Sufficient Performance

{¶17} Unlike the cases mentioned above, the case before us is not a case in which, despite no notarization, we have a fully executed contract under which the parties performed in conformance with the terms of the contract as if there was a binding agreement, and now one party is attempting to escape liability under the contract by relying on the notarization requirement. Here, the Barths did not perform any of their duties under the contract, most notably never delivering possession of the land to Hamilton. Additionally, there was no evidence of any performance by Hamilton—the party attempting to enforce the contract—sufficient to show that he had changed his position to his detriment in reliance on the contract. Further, Hamilton does not dispute that the initial deposit was returned to him, thereby placing him in statu quo.

8

## C. Incomplete Execution of the Contract

**{¶18}** Further and significantly, the contract in this case was never fully executed, which is distinguishable from a contract which was merely defectively executed. First, the date upon which the contract was entered was never completed. Next, the contract had two areas to include witness signatures, none of which were completed. Further, the contract had two areas which required the signature of a notary, one acknowledging the vendors' signatures and one acknowledging the vendee's signature. Neither of these areas were completed. Beyond that, the contract expressly required that possession be given to Hamilton *on the date of execution* and Hamilton was never given possession of the property. These facts, taken together with the fact that Ms. Barth told her son that she was not yet obligated to sell the land because she had not gone to the bank to have the contract notarized *as required by the contract*, show that the parties' intent was for the contract to be binding only upon full execution of the contract, which included notarization and the transferring of the property to Hamilton. As this never occurred, it is apparent that there was never a binding contract in this case. Because the contract was never fully executed, let alone performed, we hold that the contract was invalid and unenforceable as a matter of law. Therefore, we overrule the assignment of error.

## IV. Conclusion

**{¶19}** Having overruled the sole assignment of error, we affirm the judgment of the trial court.

Judgment affirmed.

**BERGERON** and **CROUSE, JJ.,** concur.

Please note:

The court has recorded its own entry this date.

9