[Cite as *Bob Rhodes Co. v. Polychronopoulos*, 2011-Ohio-3434.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

BOB RHODES COMPANY,                                      CASE NO. 1-11-10

   PLAINTIFF-APPELLANT,

 v.

LOUIS POLYCHRONOPOULOS,

   DEFENDANT/THIRD-PARTY                    O P I N I O N
   PLAINTIFF-APPELLEE,

 v.

JERRY M. JOHNSON, ET AL.,

   THIRD-PARTY DEFENDANTS-
   APPELLEES.

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CV 2008 1568**

**Judgment Reversed and Cause Remanded**

**Date of Decision:  July 11, 2011**

**APPEARANCES:**

   *Michael A. Rumer* **for Appellant**

   *Terry L. Lewis* **for Appellee Louis Polychronopoulos**

*Christopher F. Johnson* **for Appellees Jerry M. Johnson and
Hunt and Johnson, L.L.C.**

**PRESTON, J.**

**{¶1}** Plaintiff-appellant, Bob Rhodes Company (hereinafter "Rhodes Co."), appeals the Allen County Court of Common Pleas' grant of summary judgment in favor of defendant-appellant/third-party plaintiff, Louis Polychronopoulos (hereinafter "Polychronopoulos"). For the reasons that follow, we reverse.

**{¶2}** Rhodes Co. owns the property located at 2387 Elida Road, Lima, Ohio. (MSJ, Doc. No. 11, Steven Rhodes Aff. at ¶2). On August 30, 2004, Rhodes Co. entered into an agreement with Polychronopoulos for the lease of the aforementioned premises. (Id. at ¶3); (MSJ, Doc. No. 11, Defendant's Answers to Interrogatories #2). The term of the lease was five (5) years commencing on September 1, 2004 and terminating on August 31, 2009. (MSJ, Doc. No. 11, Steven Rhodes Aff. at ¶5). Under the terms of the lease, Polychronopoulos was responsible for monthly rent, as well as real estate taxes and utilities. (July 7, 2009 JE, Doc. No. 16). In February 2008, Polychronopoulos discontinued making rental payments under the lease and failed to make his monthly real estate tax installments and sewer payments. (Id.).

**{¶3}** On May 30, 2008, Rhodes Co. sent Polychronopoulos a letter of default requesting that the default be cured. (Id.). Polychronopoulos failed to cure the default but reached an agreement with Rhodes Co. to return possession of the

premises along with any and all personal property in the premises to Rhodes Co. (Id.). The parties further agreed, however, that the return of the premises would not affect any other obligations of the parties under the terms of the lease agreement, including the payment of rent. (Id.).

{¶4} On October 31, 2008, Rhodes Co. filed a complaint alleging that Polychronopoulos breached the terms of the lease agreement by failing to pay rent and other charges. (Doc. No. 1). The complaint further alleged that Polychronopoulos owed Rhodes Co. $4,345.00 for necessary repairs to the premises. (Id.).

{¶5} On December 5, 2008, Polychronopoulos filed an answer denying all of the complaint's allegations and asserting seven defenses. (Doc. No. 3).

{¶6} Thereafter, the matter proceeded to discovery, and Rhodes Co. filed a motion for summary judgment on April 10, 2009. (Doc. No. 11). On May 8, 2009, Polychronopoulos filed his response in opposition, and Rhodes Co. filed its reply on May 22, 2009. (Doc. Nos. 12, 14).

{¶7} On July 7, 2009, the trial court granted in part and denied in part Rhodes Co.'s motion for summary judgment. (Doc. No. 16). The trial court found that a question of fact still remained with regard to the existence of a written assignment of the lease between Rhodes Co. and Fountain Blue, Inc. executed on September 23, 2004. (Id.). However, the trial court found that no question of fact

remained with regard to Polychronopoulos' allegation that Rhodes Co. orally released him from his obligations under the lease in December 2006. (Id.).

{¶8} On July 15, 2009, Polychronopoulos' attorneys, Jerry M. Johnson and Christine M. Bollinger, filed a motion for leave to withdraw as counsel since Polychronopoulos indicated he had retained different counsel and that they might be called as witnesses at trial. (Doc. No. 17). The trial court subsequently granted the motion, and rescheduled the trial from July 23, 2009 to October 30, 2009. (Doc. No. 18).

{¶9} On July 30, 2009, attorney Terry L. Lewis filed a notice of appearance on behalf of Polychronopoulos. (Doc. No. 19).

{¶10} On November 5, 2009, attorneys John M. Leahy, Jr. and John M. Leahy, Sr. filed a motion to withdraw as counsel for Rhodes Co. since Rhodes Co. indicated that it had retained different counsel and that they might be called as witnesses at trial. (Doc. No. 24). That same day, Michael P. Anderson filed a notice of appearance on behalf of Rhodes Co. (Doc. No. 25).

{¶11} On May 18, 2010, Polychronopoulos filed a combined motion to continue the previously scheduled trial and to file a third-party complaint, which motions the trial court granted the next day. (Doc. Nos. 29-30). The trial court scheduled a pre-trial hearing for July 14, 2010. (Doc. No. 30).

{¶12} On May 25, 2010, Michael P. Anderson filed a notice of withdrawal as counsel for Rhodes Co. (Doc. No. 31).[1]

{¶13} On June 1, 2010, Polychronopoulos filed a third-party complaint against Jerry Johnson and Hunt and Johnson, L.L.C. (hereinafter collectively "Johnson"). (Doc. No. 34). On July 13, 2010, Johnson filed an answer denying the allegations of the complaint and asserting several defenses. (Doc. No. 37).

{¶14} On July 14, 2010, the trial court, during a pre-trial conference, granted the parties leave to file new motions for summary judgment. (Doc. No. 38).

{¶15} On September 27, 2010, Polychronopoulos filed a motion for summary judgment asserting that: the contract was ambiguous by virtue of page fourteen (14) and must be construed against Rhodes Co. as the drafter, thereby limiting his liability on the lease to one year; and the contract was not enforceable since there was no meeting of the minds. (Doc. No. 40).

{¶16} On September 30, 2010, Rhodes Co. filed its motion for summary judgment arguing that Polychronopoulos was liable for five (5) years under the terms of the lease agreement. (Doc. No. 44).

{¶17} On October 28, 2010, Rhodes Co. filed a response to Polychronopoulos' motion for summary judgment, and, on October 29, 2010,

---

[1] It appears that Rhodes Co. later retained Attorney Gregory M. Antalis as counsel, though no notice of appearance was actually filed. (See Doc. No. 31).

Polychronopoulos filed a response to Rhodes Co.'s motion for summary judgment. (Doc. Nos. 47-48).

{¶18} On November 12, 2010, the trial court granted summary judgment in favor of Polychronopoulos finding that the lease agreement was ambiguous as to Polychronopoulos' liability under the lease; namely whether it was for the full five-year term of the lease or only one year. (Doc. No. 49). The trial court, therefore, concluded that the contract must be construed against the drafter, Rhodes Co., to limit Polychronopoulos' liability to one year. (Id.).

{¶19} On January 25, 2011, Rhodes Co. filed a motion for Civ.R. 54(B) certification and motion to stay the proceedings pursuant to Civ.R. 62(E). (Doc. Nos. 53-54). On January 26, 2011, the trial court certified the judgment entry to be a final appealable order pursuant to Civ.R. 54(B). (Doc. No. 55).

{¶20} On February 24, 2011, Rhodes Co. filed a notice of appeal. Rhodes Co. now appeals raising two assignments of error for our review.

## ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED WHEN IT DETERMINED THERE ARE NO GENUINE ISSUES OF MATERIAL FACT RELATIVE TO DEFENDANT'S LIABILITY UNDER THE LEASE AGREEMENT AND GRANTED DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS A MATTER OF LAW LIMITING DEFENDANT'S LIABILITY TO A ONE YEAR PERIOD.**

{¶21} In its first assignment of error, Rhodes Co. argues that the trial court erred in granting Polychronopoulos summary judgment because: (1) the "Guaranty

of Lease" is a separate document from the lease, not part of the lease, which is unexecuted and fails to comply with the statute of frauds; and (2) the evidence in the case demonstrates the existence of only two parties throughout the entire transaction.

{¶22} We review a decision to grant summary judgment de novo. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243. Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 219, 631 N.E.2d 150.

{¶23} This case calls for an interpretation of the contract between the parties. "Contract interpretation is a matter of law, and questions of law are subject to de novo review on appeal." *St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, 875 N.E.2d 561, ¶38, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684.

{¶24} Relevant to this appeal, the lease agreement herein lists "Bob Rhodes Company" as lessor and "Louis Polychronopoulos" as lessee. (Doc. No. 1, Ex. A, pg. 1 and § 17.01). The lease states a term of five (5) years commencing on

September 1, 2004 and terminating on August 31, 2009. (Id. at § 1.04). The lessee was required to pay zero dollars ($0.00) rent for the first four (4) months; however, upon signing the lease, lessee was required to pay the fifth (5th) month's rent of six thousand five hundred dollars ($6,500.00) on or before the start of the lease. (Id. at § 2.01(A)-(B)). During months five (5) through twelve (12), lessee was required to pay fifty-two thousand dollars ($52,000.00), at the rate of six thousand five hundred dollars ($6,500.00) per month, in rent. (Id. at § 2.01(C)). During the second (2nd) year through the fifth (5th) year, lessee was required to pay seventy eight thousand dollars ($78,000.00) per year, at the rate of six thousand five hundred ($6,500.00) per month, in rent. (Id. at § 2.01(D)). The lease further provided that lessee was responsible for the payment of real estate taxes and assessments, as well as utilities used at the premises. (Id. at Arts. III & V). Article fifteen (15) of the lease agreement provides:

> **Lessee shall not assign or sublease the leased premises during the term of this Lease or any extension thereof, without the written consent of the Lessor. Lessor shall, in its sole discretion, have the option to release Lessee from any further obligation under the lease agreement.**

Section 17.05 of the lease provides:

> **This lease constitutes the sole and only agreement of the parties hereto and supersedes any prior understandings or written or oral agreements between the parties respecting the within subject matter.**

Section 17.06 of the lease provides:

> **No amendment, modification, or alteration of the terms thereof shall be binding unless the same be in writing, dated subsequent to the date hereof and duly executed by the parties hereto.**

**{¶25}** Page thirteen (13) of the lease agreement, contains the signatures of lessor "Bob Rhodes Company" "By: Steven M. Rhodes" and lessee "Louis Polychronopoulos." (Doc. No. 1, Ex. A). Under the signatures, also on page thirteen (13), appears the following:

> **BEFORE ME, a Notary Public in and for said County, personally appeared the above named Bob Rhodes Company, by Steven M. Rhodes, its Vice President, and acknowledged the signing thereof to be his voluntary act and deed and the voluntary act and deed of said corporation.**
> **\* \* \***
> **BEFORE ME, a Notary Public in and for said County, personally appeared the above named <u>Louis Polychronopoulos</u>, ~~by~~ _____, ~~its~~_____, and acknowledged the signing thereof to be his voluntary act and deed ~~and the voluntary act and deed of said corporation.~~**

Page fourteen (14) provides:

**<u>GUARANTY OF LEASE</u>**

> **In consideration of the lease of the Premises to Lessee and for other good and valuable consideration, the undersigned guarantees, for a period of one (1) year from the date of the commencement of the first lease year under the terms of this lease, (a) that Lessee will pay when due all of the rentals and all other sums payable by Lessee as specified in the Lease and (b) that Lessee will perform and comply with all the agreements and obligations provided for the Lease at the time and in the manner set forth in the Lease.**

> _____
>
> _____

**Printed Name**

(Doc. No. 1, Ex. A). Although a signature line appears on page fourteen (14), as shown above, no actual signatures appear on the page. (Id.). Page fourteen (14) was not expressly incorporated into the lease agreement. (Id.). Page fifteen (15) is labeled "Exhibit 'A' Legal Description" and was incorporated into the lease agreement in Section 1.01 of the lease agreement. (Id., at § 1.01). Page sixteen (16) is labeled "Exhibit 'B'" and contains the list of equipment at the premises, which the lessee was permitted to use at the premises. (Id.). Exhibit B, page sixteen (16), was incorporated into the lease agreement under Section 1.02 of the lease agreement. (Id. at § 1.02).

{¶26} The trial court found that the lease agreement was ambiguous because Section 1.04 held lessee, Polychronopoulos, liable for a term of five (5) years, while the "Guaranty of Lease" on page fourteen (14) limited Polychronopoulos' liability to one (1) year. We disagree with the trial court's interpretation of the contents of the lease agreement for several important reasons.

{¶27} First, and foremost, page fourteen (14) is *not* part of the lease agreement. Ohio's statute of frauds required that the lease agreement and the guaranty herein be in writing and signed by the party or parties to be charged. *Mark v. Long*, 180 Ohio App.3d 832, 2009-Ohio-581, 907 N.E.2d 759, ¶9, citing *Manifold v. Schuster* (1990), 67 Ohio App.3d 251, 254, 586 N.E.2d 1142, citing R.C. 1335.04 and 1335.05; *Loveland Properties v. Ten Jays, Inc.* (1988), 57 Ohio

App.3d 79, 83, 567 N.E.2d 270.  An excerpt from this Court's opinion in *Beggin v. Ft. Worth Mtge. Corp.* is instructive here:

> **In *Thayer v. Luce* (1871), 22 Ohio St. 62, paragraphs one and two of the syllabus, the Ohio Supreme Court stated:**
>
> **"Several writings, though made at different times, may be construed together, for the purpose of ascertaining the terms of a contract required, by the statute of frauds, to be in writing and signed by the party to be charged therewith.**
>
> ***If some only of such writings be so signed, reference must be specifically made therein to those which are not so signed;* but if each of the writings be so signed, such reference to the others need not be made, if, by inspection and comparison, it appear that they severally relate to or form part of the same transaction." (Emphasis added.)**
>
> **Thus, under Ohio law, separate signed and unsigned writings may be integrated to satisfy the Statute of Frauds *only when the signed writing "specifically" makes "reference" to the unsigned writing.* If the signed writing does not make specific reference to the unsigned writings, then the separate writings cannot be integrated for the purpose of satisfying the Statute of Frauds, R.C. 1335.05.**

(1994), 93 Ohio App.3d 333, 337, 638 N.E.2d 604 (Emphasis in original). See, also, *Pulver v. Rockwood Highland Tower Investments* (Mar. 26, 1997), 1st Dist. Nos. C-950361, C-950429, at *4; *O'Leary v. Burnett* (2nd Dist. 1949), 92 N.E.2d 407, 409-10; *McGilvery v. Shadel* (6th Dist. 1949), 87 Ohio App. 345, 349-50, 95 N.E.2d 1; *Unger v. Chaves* (8th Dist. 1953), 113 N.E.2d 753, 755; *Chicago West Pullman Corp. v. Quinn* (Feb. 9, 1999), 9th Dist. No. 98CA007048, at *4; *Soteriades v. Wendy's of Ft. Wayne, Inc.* (10th Dist. 1986), 34 Ohio App.3d 222,

225, 517 N.E.2d 1011; *Alford v. Moore* (Nov. 30, 1998), 12th Dist. No. CA98-04-026, at *3; *Milam Dev. Corp. v. 7*7*0*1 Wurzbach Tower Council of Co-Owners, Inc.* (Tex. App. 1990), 789 S.W.2d 942, 945, citing *Owens v. Hendricks* (Tex. 1968), 433 S.W.2d 164 ("In order for a document to be considered as part of a signed contract, it is necessary that it be signed or referred to in the signed contract. The mere stapling of an unsigned document to a contract which contains no mention of such document is not sufficient to incorporate that document into the contract."); 51 Ohio Jurisprudence 3d (2011) Frauds, Statute of, Section 108; 72 American Jurisprudence 2d (2011) Statute of Frauds, Section 288; 17A American Jurisprudence 2d (2011) Contracts, Section 391; 10 Williston, Contracts (4 Ed. 2011), 652, Section 29:31. Applying the rule herein, page fourteen (14) was *not* specifically incorporated into the lease by reference like pages fifteen (15) and sixteen (16) of the lease (Exhibits A and B); and therefore, page fourteen (14) is *not* part of the lease agreement.

{¶28} Second, the fact that page fourteen (14) was intended to be separate from the lease agreement is apparent from the very nature of what page fourteen (14) purports to be: a guaranty. "A guaranty is an undertaking by *one person* to be liable for the payment of some debt or the due performance of some contract or duty *by another person* who himself or herself remains liable to pay or perform the same." 52 Ohio Jurisprudence 3d (2011) Guaranty and Suretyship, Section 2. See, also, *Loveland Properties*, 57 Ohio App.3d at 83. The contract of guaranty is a

*collateral undertaking* to answer for another's liability, *separate and distinct from the contract of the principal*. Id. See, also, *Sturges & Co. v. Bank of Circleville* (1860), 11 Ohio St. 153, 163-64. Furthermore, the guaranty's language and format indicate that it was a separate agreement, which the parties intended to separately execute as evidenced by the fact that it contains a separate signature line apart from the lease agreement.

{¶29} Third, the trial court's incorporation of page fourteen (14) into the contract is also inconsistent with the parties' expressed intent that the signed agreement, i.e. pages one through thirteen (1-13) and Exhibits A & B (pages 15 & 16) through incorporation, was the sole agreement of the parties respecting the matter, and the parties further expressed intent to limit any modifications to the lease to those *separately executed in writing*. (Doc. No. 1, Ex. A at §§ 17.05-.06). The guaranty was not separately executed by the parties but merely attached to the signed contract. (Doc. No. 1, Ex. A). Moreover, the trial court's ruling undermines the integrity and security of written contracts generally, whether the contracts contain an integration clause or not.

{¶30} Fourth, the record indicates the existence of only two parties at the time the lease agreement was signed—the Rhodes Co. and Polychronopoulos. Polychronopoulos testified that, at the time the lease was signed, he had not yet formed an Ohio corporation to sign the lease agreement, so he signed the lease agreement in his name. (Polychronopoulos Depo. at 8-15). Polychronopoulos

admitted that he was the lessee under the terms of the contract he signed and admitted that the term of the contract was five (5) years. (See Doc. No. Doc. No. 11, Ex. C); (Doc. No. 40, Polychronopoulos Aff.). Although Polychronopoulos may have intended to later assign the lease to a corporation, that never actually happened. (Doc. No. 40, Polychronopoulos, Aff.); (Polychronopoulos Depo. at 37); (Doc. No. 48, Polychronopoulos' Response to Plaintiff's Motion for Summary Judgment) ("Although [the] assignment was transferred to Defendant's counsel in September, 2005, there is no evidence that the Assignment of the Lease was ever executed by either party.").

{¶31} For all these reasons, we sustain Rhodes Co.'s first assignment of error.

### ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED WHEN IT DENIED PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO THE ISSUE OF LIABILITY OF DEFENDANT TO PLAINTIFF UNDER THE LEASE AGREEMENT.**

{¶32} In their second assignment of error, Rhodes Co. argues that the trial court erred by denying their motion for summary judgment against Polychronopoulos for his breach of the contract.

{¶33} "To succeed on a breach-of-contract claim, a plaintiff must show the existence of a valid contract, performance by one party, breach by another party, and damages or loss to the performing party." *Allason v. Gailey*, 189 Ohio App.3d

491, 2010-Ohio-4952, 939 N.E.2d 206, ¶56, citing *Lucio v. Safe Auto. Ins. Co.*, 183 Ohio App.3d 849, 2009-Ohio-4816, 919 N.E.2d 260, ¶23. "'Breach,' as applied to contracts is defined as a failure without legal excuse to perform any promise which forms a whole or part of a contract, including the refusal of a party to recognize the existence of the contract or the doing of something inconsistent with its existence." *Natl. City Bank of Cleveland v. Erskine & Sons* (1953), 158 Ohio St. 450, 110 N.E.2d 598, paragraph one of the syllabus.

**{¶34}** By the time Rhodes Co. filed its second motion for summary judgment, no material issues of fact remained. By that point in the litigation, Polychronopoulos acknowledged that the parties had never executed a valid written assignment of the lease (the basis of his third-party complaint against his former attorney), and Polychronopoulos' theory of the case had changed undoubtedly as a result of discovery. (See Doc. Nos. 34, 40, 48); (Doc. No. 40, Polychronopoulos' Aff. at ¶¶8-10). To that end, Polychronopoulos filed a motion for summary judgment alleging that the contract was ambiguous by virtue of page fourteen (14) and, as such, should be construed against Rhodes Co. as drafter effectively limiting his personal liability under the lease to one (1) year. (Doc. No. 40). In response, Rhodes Co. filed its second motion for summary judgment again alleging breach of contract, and the trial court considered the two motions together as cross-motions for summary judgment. (Doc. Nos. 44, 49). The trial court ultimately agreed with Polychronopoulos that the contract was ambiguous by

virtue of page fourteen (14); however, this conclusion of law was incorrect as we have already explained. (Doc. No. 49, Nov. 12, 2010 JE). The question now is whether the trial court should have granted the motion for summary judgment filed by Rhodes Co. alleging breach of contract. The answer is "yes."

{¶35} Throughout the course of the litigation, Polychronopoulos has admitted that he signed the five-year lease agreement for the premises at 2387 Elida Road, Lima, Ohio. (Doc. No. 1, Ex. A); (Doc. No. 11, Exs. B-D); (Defendant's Response to Interrogatories #2); (Doc. No. 13, Defendant's Pre-trial Statement); (Doc. No. 16, July 7, 2009 JE); (Doc. No. 34, Third Party Complaint, at ¶17); (Doc. No. 40, Polychronopoulos Aff. at ¶8); (Doc. No. 48, Polychronopoulos' Response to Plaintiff's Motion for Summary Judgment). Polychronopoulos has never disputed that he has failed to pay rent, real estate taxes, and sewer charges as required under the lease agreement beginning in February 2008. (Doc. No. 11, Rhodes Aff. at ¶¶6-7); (Doc. No. 16, July 7, 2009 JE); (Doc. No. 11, Exs. B & C). Polychronopoulos' failure to fulfill his promise of paying the aforementioned constitutes a breach of the lease agreement. *Natl. City Bank of Cleveland*, 158 Ohio St. 450, paragraph one of the syllabus. Polychronopoulos has also never denied that his failure to pay rent, real estate taxes, and sewer caused Rhodes Co. to suffer damages, though he did assert that Rhodes Co. failed to mitigate its damages. Under these circumstances, we find that the trial court erred by failing to grant Rhodes Co.'s motion for summary

judgment on its breach of contract claim. However, since Rhodes Co.'s motion for summary judgment only dealt with the issue of liability, damages will need to be determined upon remand.

**{¶36}** Rhodes Co.'s second assignment of error is, therefore, sustained.

**{¶37}** Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and Cause Remanded*

**ROGERS, P.J. and SHAW, J., concur.**

**/jnc**