[Cite as *Thiel's Wheels, Inc. v. State Route 30, Ltd.*, 2022-Ohio-2093.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY

THIEL'S WHEELS, INC.

      PLAINTIFF-APPELLEE,                 CASE NO  16-21-06

      v.

STATE ROUTE 30, LTD.,                 **O P I N I O N**

      DEFENDANT-APPELLANT.

Appeal from Wyandot County Common Pleas Court
Trial Court No. CV 2019-CV-0076

Judgment Affirmed

Date of Decision:   June 21, 2022

APPEARANCES:

    *Doug Holthus* for Appellant

    *Bradley S. Warren* for Appellee

**SHAW, J.**

{¶1} Defendant-Appellant, State Route 30, Ltd. ("Route 30"), appeals the October 27, 2021 Judgment Entry of the Wyandot County Court of Common Pleas which granted judgment in favor of Plaintiff-Appellee, Thiel's Wheels, Inc. ("Thiel's").

*Facts and Procedure*

{¶2} On August 13, 2019, Thiel's filed a complaint in case number 19CV0076 for breach of contract and promissory estoppel. Thiel's alleged that it had entered into an Asset Purchase Agreement with Route 30 and that Route 30 had failed to fulfill its obligations under the Agreement by not making the $50,000.00 per year racing sponsorship payments pursuant to paragraph 6 of the Agreement. On September 4, 2019, Route 30 filed an Answer. Route 30 filed its counterclaim on March 6, 2020. In the counterclaim, Route 30 alleged breach of contract by Thiel's and unjust enrichment.

{¶3} Subsequently, on April 20, 2020, Thiel's filed a second complaint, case number 20CV0038, against Route 30. Thiel's alleged that following the sale under the Asset Purchase Agreement, Route 30 had wrongfully retained a metal lathe which was not included on the Bill of Sale's asset list. Upon motion by Thiel's, the trial court consolidated the two cases.

{¶4} The complaint, counterclaim, and second complaint arose from the following facts. On June 11, 2018, Thiel's and Route 30 entered into an Asset Purchase Agreement whereby Route 30 purchased the assets of Thiel's Harley-Davidson motorcycle dealership located in Upper Sandusky, Ohio. The terms of that Agreement included paragraph 6 which was titled "Racing Sponsorship." The resulting Ohio Bill of Sale was signed by Thiel's on August 1, 2018.

{¶5} A trial was held before a magistrate on April 22, 2021. Thiel's representative, Marc Ingwersen ("Ingwersen"), appeared at the trial and Route 30 appeared by its sole member, Amanda Crates ("Crates"). Following the trial, the magistrate found that Route 30 breached the Agreement when it failed to make monthly payments from January 2019 for the racing sponsorship. The magistrate also found that Route 30 was in wrongful possession of the lathe. The magistrate issued a decision recommending Thiel's be awarded judgment on its complaint on the grounds of breach of contract on a monthly amount, plus a judgment for $2,950.00 representing the value of the lathe. The magistrate recommended that Route 30's counterclaim be dismissed as to both counts.

{¶6} Route 30 filed preliminary objections to the magistrate's decision, which were later supplemented once the transcript from the trial was filed. Thiel's then filed a response. The trial court filed two judgment entries, one which overruled Route 30's objections and adopted the magistrate's decision, but with

-3-

judgment granted in favor of Thiel's in the amount of $129,166.65 for breach of contract and $2,950.00 for the value of the lathe, plus statutory interest on both amounts.  The other entry included the trial court's judgment in favor of Thiel's and dismissed Route 30's counterclaims as to both counts.

{¶7} Route 30 has appealed, raising two assignments of error.

**Assignment of Error No. 1**

**THE TRIAL COURT ERRED IN GRANTING JUDGMENT IN FAVOR OF THIEL'S ON ITS BREACH OF CONTRACT CLAIMS.**

**Assignment of Error No. 2**

**THE TRIAL COURT ERRED IN DISMISSING ROUTE 30'S COUNTERCLAIMS.**

{¶8} We jointly consider Route 30's assignments of error.

I. Legal Analysis

{¶9} As a ground for its first assignment of error, Route 30 contends that the racing sponsorship paragraph in the Asset Purchase Agreement is not enforceable because it is not supported by consideration, as Thiel's promise of performance is illusory.  In the alternative, Route 30 argues that the undisputed evidence shows Thiel's failed to perform its obligation under the terms of the racing sponsorship, and, as a result, the trial court erred in entering judgment in favor of Thiel's on its breach of contract claim.  Route 30 then argues in its second assignment of error that the trial court erred when it dismissed Route 30's counterclaim for unjust

enrichment for five payments made under the sponsorship or, in the alternative, for breach of contract against Thiel's to recoup the payments as damages.

*A. General Contract Principles*

{¶10} " 'A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.' " *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976).

{¶11} It is well established that when interpreting contracts, " '[c]ontracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language.' " *Lutz v. Chesapeake Appalachia, L.L.C.*, 148 Ohio St.3d 524, 2016-Ohio-7549, ¶ 9, quoting *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244 (1974), paragraph one of the syllabus. As recently stated by the Supreme Court of Ohio in *Beverage Holdings, L.L.C. v. 5701 Lombardo, L.L.C.*, 159 Ohio St.3d 194, 2019-Ohio-4716, ¶ 13:

> **[I]f the language of a contract is plain and unambiguous, we enforce the terms as written, and we may not turn to evidence outside the four corners of the contract to alter its meaning. * * * When considering the language of a particular contractual provision, "[c]ommon words * * * will be given their ordinary meaning unless manifest absurdity results or unless some other**

> **meaning is clear from the face or overall contents of the agreement."** *Anders*, **99 Ohio St.3d 156, 2003-Ohio-3048, at ¶ 34, citing** *Alexander v. Buckeye Pipe Line Co.,* **53 Ohio St.2d 241 (1978), paragraph two of the syllabus.**

Additionally, the construction and interpretation of contracts are matters of law subject to a de novo standard of review. *Roberts v. Marks*, 3d Dist. Henry No. 7-16-15, 2017-Ohio-1320, ¶ 11, citing *Langfan v. Carlton Gardens Co.*, 183 Ohio App.3d 260, 2009-Ohio-3318, ¶ 24 (3rd Dist.).

### 1. Consideration

{¶12} "Consideration may consist of either a detriment to the promisee or a benefit to the promisor." *Williams v. Ormsby*, 131 Ohio St.3d 427, 2012-Ohio-690, ¶ 16. "A benefit may consist of some right, interest, or profit accruing to the promisor, while a detriment may consist of some forbearance, loss, or responsibility given, suffered, or undertaken by the promisee." *Id.* Additionally, " '[a]bsent a showing of fraud, consideration is not deemed legally insufficient merely because it is inadequate.' " *First Natl. Bank of Omaha v. iBeam Solutions, L.L.C.,* 10th Dist. Franklin No. 13AP-850, 2016-Ohio-1182, ¶ 44, quoting *Brads v. First Baptist Church*, 89 Ohio App.3d 328, 336 (2d Dist. 1993). *See also Carlisle v. T & R Excavating, Inc.,* 123 Ohio App.3d 277, 283 (9th Dist. 1997) (courts generally do not inquire into the adequacy of consideration once it is found to exist).

{¶13} "An illusory promise is a promise that lacks consideration and thus, is unenforceable." *McGlone v. Motorist Mut. Ins.*, 3d Dist. Crawford No. 3-2000-25,

-6-

2001-Ohio-2188, *4, citing *Hilton v. Tire Tread Development, Inc., et al.,* 11th Dist. Portage App. No. 92-P-0053 (June 30, 1993).

### 2. Breach of Contract

**{¶14}** The elements of a breach-of-contract claim are the existence of a contract, performance by one party, non-performance by the other party, and damages or loss to the performing party. *Bob Rhodes Co. v. Polychronopoulos*, 3d Dist. Allen No. 1-11-10, 2011-Ohio-3434, ¶ 33.

*B. The Plain Language of Paragraph 6*

**{¶15}** Paragraph 6 of the Asset Purchase Agreement, which is titled "Racing Sponsorship," provided:

> 6. As further consideration for the conveyance of assets contemplated under this Agreement, the Purchaser agrees to sponsor the Seller's motorcycle racing team for a period of three (3) years commencing with the closing of the transaction contemplated herein. Purchaser agrees to pay to Seller the sum of Fifty Thousand Dollars ($50,000.00) per year for said sponsorship. The first payment shall be made on or before September 1, 2018 and shall be paid out on a monthly basis for a total of thirty-six (36) consecutive months. Purchaser shall be recognized as a sponsor of the motorcycle racing team in such manner as may be determined by Seller. In addition, Purchaser also agrees to lease to Seller the portion of the real property to be conveyed herein which is identified as the "race shop" for a period of five (5) years subsequent to the closing of the transaction contemplated herein. Purchaser agrees that during the three (3) year sponsorship period, the race shop shall be provided to the Seller rent free. After the end of the sponsorship period Seller agrees to pay to Purchaser the sum of Five Hundred Dollars ($500.00) per month for the lease of the race shop. The lease may be terminated by the Seller at any time upon thirty (30) days written notice to Purchaser. The lease shall be in form

and on such standard terms as may be agreed upon by the parties hereto.

(Plaintiff's Ex. 1).

*C. Consideration*

**{¶16}** We begin our analysis by noting the existence of consideration given in exchange for the racing sponsorship being established in the first sentence of paragraph 6, which begins, "As further consideration for the conveyance of assets contemplated under this Agreement, the Purchaser agrees to sponsor the Seller's motorcycle racing team for a period of three (3) years commencing with the closing of the transaction contemplated herein." In addressing Route 30's claim of "illusory contract," the trial court came to the conclusion that such claim is "incorrect when one considers that the sponsorship clause in the contract is what led to the agreement between the parties being achieved." (Oct. 8, 2021 J.E. at 6). The trial court further noted that Crates testified that she felt that sponsoring Thiel's would be a benefit to her business.

**{¶17}** On appeal, Route 30 argues that the consideration is "illusory" because "[u]nder the plain language of the Sponsorship Agreement, Thiel's was not obligated to do anything in return for Route 30's $150,000.00 sponsorship payments." (Appellant's Brief at 8). Specifically, that Thiel's made only an illusory promise that "[Route 30] shall be recognized as a sponsor of the motorcycle racing team in such manner as *may be determined by Seller*." (*Id.* emphasis sic.) However,

this argument focuses on the adequacy of the consideration given, and, therefore, does not render it insufficient. *First Natl. Bank of Omaha,* 10th Dist. Franklin No. 13AP-850, 2016-Ohio-1182.

{¶18} After a review of the record, we agree the trial court correctly reasoned that the racing sponsorship was not an illusory promise. This is consistent with the apparent intent of the parties as evidenced by the Asset Purchase Agreement itself. The Agreement between Thiel's and Route 30 consisted of the sale of the business assets for the purchase price plus the $150,000.00 racing sponsorship to be paid over three years in monthly payments.

### D. Breach of Contract

{¶19} In this case, each party claimed the other failed to perform on its part of the racing sponsorship pursuant to paragraph 6 of the Asset Purchase Agreement. Thiel's claims that Route 30 did not make its monthly payments for the sponsorship and Route 30 claims that Thiel's failed to perform by not acknowledging it as a sponsor. The annual sponsorship amount was to be made by monthly payments, for a total of thirty-six months. As stipulated by the parties, Route 30 made five (5) of the thirty-six monthly payments to Thiel's totaling $20,833.35. The parties further stipulated that Thiel's occupied the "race shop" portion of the building for a period of seventeen (17) months, also pursuant to paragraph 6.

{¶20} In support, Route 30 argues that evidence was presented at trial that (1) after entering into the racing sponsorship, Thiel's made the decision to withdraw from all motorcycle races for the remainder of the 2018 racing season and, as a result, Thiel's did not and could not recognize Route 30 as a sponsor, or even engage in the activities that the sponsorship was designed to support, and (2) Thiel's never requested that Route 30 provide Thiel's a logo or other promotional materials.

{¶21} At trial, evidence indicated that Thiel's operates a high-end professional motorcycle racing team that has participated in racing across the country. The evidence also indicated that its racing team cancelled some of their races and did not race for the remainder of the 2018 racing season to allow Thiel's crew chief and Route 30's employee, Jon Miller, time to acclimate himself to Route 30's new business venture.

{¶22} As to the racing sponsorship, the trial court acknowledged that neither party had requested or supplied any specific materials or logo's, etc. However, the trial court also cited expert testimony indicating, among other things, that "the use of name, image and likeness of a racer is a form of sponsorship." (Oct. 8, 2021 J.E. at 4, citing T.II p. 162).

{¶23} The trial court then summarized the additional trial evidence on this point as follows:

> Further, Marc Ingwersen, Seller's representative, is a pro motorcycle racer (T.I. p. 13) and his racing team has enjoyed success. (T.I. p. 14)

> Ingwersen opined that his name, image and likeness are valuable. (T.I. p. 15) Ingwersen testified that despite not being given anything by Purchaser, he did the best he could in promoting Purchaser's business. Ingwersen used Facebook, websites, print and a billboard to "sponsor" Purchaser. His name, image and likeness were used and some of his screen shots were still on Purchaser's Facebook page in the Fall of 2020. (T.I. p. 48) Seller testified of other efforts undertaken on behalf of Purchaser. (T.I. pgs. 51-67) (Exhibits 4, 5, 6, 11).

(*Id.* at 4-5).

{¶24} The trial evidence further revealed that by the end of 2018, Crates decided she no longer wanted to be publicly associated with the former owner and Thiel's. As noted by the trial court, during her testimony, Crates recounted that "within the first month of ownership" when she attended the Marion Popcorn Festival to distribute tickets for beer, she had been "cussed out" by people who dealt with the previous ownership and that she had never been so offended. (*Id.* at 5, citing T.II p. 200).

{¶25} This Court has considered the entire record of proceedings in the trial court and, upon consideration, we find that the record contains sufficient evidence to support the trial court's conclusion that Route 30 breached the terms of the Asset Purchase Agreement after December 2018 by not making the monthly payments to Thiel's for the racing sponsorship.

## II. Lathe

{¶26} The other issue raised on this appeal is whether the trial court erred in ruling that the metal lathe was excluded from the list of assets under the parties' Asset Purchase Agreement. On appeal, Route 30 points out that Ingwersen admitted at trial that the lathe is a piece of machinery. Route 30 argues that, based upon the clear and unambiguous language of the Agreement, the lathe was included in the sale and Route 30 did not breach the Agreement by retaining the lathe.

{¶27} Paragraph 1 ("Purchase and Sale") of the Asset Purchase Agreement provided that Seller [Thiel's] would sell and deliver its "business property used exclusively in the operation of the business commonly known as Thiel's Wheels, Inc., including, but not limited to Seller's FF&E, Parts & Accessories, Rolling Stock and Goodwill & Intangibles, more particularly described in Exhibit 'A' attached hereto and referred to herein as the 'Assets.' " (Plaintiff's Ex. 1). Also provided was: " 'FF&E' shall include all furniture, fixtures and equipment and includes but is not limited to all computers, lifts, machinery, tools, desk chairs, phone system, part bins, racks, video systems and alarm systems." (*Id.*)

{¶28} Paragraph 7 ("Deliverables") set forth that the Seller [Thiel's] was required to deliver a Bill of Sale conveying "the Assets to be sold pursuant to the terms of this Agreement in favor of the Purchaser." (*Id.*)

{¶29} Thiel's introduced as Plaintiff's Exhibit 2 an Ohio Bill of Sale containing the asset list (Exhibit "A"). The asset list had a total value of $1,388,014.08 of which $597,051.16 of line items had been crossed out.[1] The document Thiel's relied upon constituted evidence that the parties could not have come to the figure to be excluded from the sale ($597,051.16) without line item #245 being included. As Thiel's representative testified, item "245 Shop Mach" for $2,950.00, represented the lathe which was part of the crossed out items that were excluded from the sale. Further, Crates' "acknowledgment that motor vehicles were to be excluded from the list of assets bolsters [Thiel's] contention that the lathe was crossed out, because on the list of assets attached to the Bill of Sale, numerous motor vehicles were crossed out as well." (June 17, 2021 Magistrate's Decision at 9).

{¶30} The trial court upheld the magistrate's decision that Thiel's evidence proved its claim. The trial court noted that the magistrate was in the best position to judge the credibility of the witnesses, but "mathematical calculations involved also favor Seller's [Thiel's] position in this matter." (Oct. 8, 2021 J.E. at 8). The trial court further noted that, although the parties disputed the meaning of markings on the asset list, "both Seller and the Magistrate noted the only way to make the mathematical figures reconcile is to exclude the value of line item 245, the metal

---

[1] We recognize the list originally was produced for tax purposes, but was acknowledged as an asset list.

lathe." (*Id.*) The trial court concluded "[t]his circumstance supports the Seller's contention that the metal lathe was to be excluded from the Sale." (*Id.*)

{¶31} We conclude that the trial court did not err in ruling in Thiel's favor. Evidence in the form of Plaintiff's Exhibit 2, as well as testimony, was presented from which the trial court could reasonably conclude that the lathe was excluded from the asset sale between the parties.

{¶32} Based on the foregoing, Route 30's two assignments of error are overruled, and the judgment of the Wyandot County Court of Common Pleas is hereby affirmed.

*Judgment Affirmed*

**MILLER and WILLAMOWSKI, J.J., concur.**

**/jlr**