MARY J. BOYLE, J.:
{¶ 1} Plaintiffs-appellants, 6610 Cummings Court, L.L.C. ("6610") and Munna Agarwal (collectively "appellants"), appeal the trial court's grant of partial summary judgment to defendants-appellees, Darrel Scott, Belinda Scott, and New Spirit Revival Ministries Inc. ("New Spirit") (collectively "appellees"), and the trial court's award of damages. Appellants raise 16 assignments of error for our review:
1. The trial court erred in denying appellants summary judgment and granting appellees summary judgment where the evidence clearly showed that the contract in issue was a sale contract and not a lease.
2. The trial court erred in denying appellants summary judgment and granting defendants summary judgment where the memorandum dated March 6, 2010 introduced by appellants was a sufficient admissible writing to satisfy the requirements of the statute of frauds.
3. Alternatively, the trial court erred in denying appellants summary judgment and granting appellees summary judgment where the memorandum dated March 6, 2010 introduced by appellants together with ancillary unexecuted documents were admissible sufficient writings to satisfy the requirements of the statute of frauds.
4. The trial court erred in denying appellants summary judgment and granting appellees summary judgment where the evidence showed that the contract in issue was removed from the operation of the statute of frauds by the doctrine of partial performance.
5. The trial court erred in denying appellants summary judgment and granting appellees summary judgment where the evidence showed that appellees were precluded from obtaining affirmative relief due to their default on the sale contract.
6. The trial court erred in denying appellants summary judgment and granting appellees summary judgment where the evidence clearly showed that the intent of the parties was that there be a sale contract.
7. The trial court erred in failing to consider the memorandum and draft contracts as evidence of the intent of the parties to create a sale contract.
8. The trial court erred in failing to consider the memorandum and draft contracts as a single document for purposes *367 of establishing a binding sale contract.
9. The trial court erred in failing to find that appellees breached the contract.
10. The trial court erred in determining the end date of the contract.
11. The trial court erred in failing to declare all amounts paid by appellees toward the purchase of the property as forfeited by reason of appellees' breach of the sale contract.
12. The trial court erred in determining appellants' damages by crediting forfeited principal payments toward rent and failing to charge appellees for property taxes as required by the contract.
13. The trial court erred in determining the end date of the contract.
14. The trial court erred in failing to find appellee New Spirit Revival Center Ministries Incorporated a party to the sale contract where the evidence showed that the parties intended that New Spirit be a party and the monies paid under the contract were paid largely or entirely by New Spirit.
15. The trial court erred in holding that appellants had not adequately established damages where the use of a summary of damages is permissible under Evid.R. 1006, the court based its determination of damages on a similar summary of appellees, and the parties stipulated to the admissibility of the summaries.
16. The judgment of the trial court was against the manifest weight of the evidence.
{¶ 2} Finding no merit to their assignments of error, we affirm.
I. Procedural History and Factual Background
{¶ 3} The following facts are largely undisputed. In 2006, Agarwal became the owner of a sublot located at 6610 Cummings Court in Solon, Ohio ("the property") and began constructing a home on the property.
{¶ 4} Around March 2010, the Scotts expressed an interest in the property and began discussing a possible deal with Agarwal. During these discussions, Darrel Scott created a "memorandum" of the transaction ("the memorandum"), which stated, "Lease option - purchase price 1.9 million" and contained the following numbered points:[1]
1. 5 yrs./ 2 yr. extension
2. Downput 50,000.00 plus construction cost 5,000 already given
3. 1,500 per week from March 22 to May 3 - 9,000
4. 2,500 per week from May 3 to end of lease
5. 5,000 per month from Jun thru Nov [illegible writing]
6. 3,000 per month March and April - Down pmt [illegible writing]
7. 52 pmt per year of 2,500.00
8. 10,000 per year applied to purchase price
9. 25,000 balloon pmt each year applied to purchase price 120,000 amt. [Circled] Due April-June.
10. Scotts pay property taxes/insurance
11. 4% [illegible writing] per year - 2% applies to down pmt
The Scotts and Agarwal signed the memorandum.
{¶ 5} Approximately two weeks later, Agarwal had an attorney prepare a real *368 estate purchase agreement ("purchase agreement") and an installment purchase land contract ("installment contract") as part of the parties' discussions. The purchase agreement set forth terms of an agreement under which New Spirit would purchase the property from Agarwal. The installment contract lists terms of a land contract between New Spirit and 6610. Neither document was signed by the parties or acknowledged.
{¶ 6} On July 10, 2010, the Scotts moved into the property. Per the memorandum, the Scotts paid $2,500 in rent per week. According to testimony and evidence presented at the damages hearing, beginning in February 2013, the Scotts paid $2,850 in rent per week until September 2016, and both parties agreed that the $350 increase in rent was to account for property taxes.
{¶ 7} In September 2010, Agarwal created a limited liability company, 6610, and executed a quit claim deed conveying the property and home to 6610. As a result, 6610 became the new owner of the property, and the Scotts made their payments to 6610.[2]
{¶ 8} On September 28, 2016, the Scotts stopped making their weekly payments. As a result, Agarwal served the Scotts with a notice to leave the premises. The Scotts vacated the property on October 10, 2016.[3]
A. Case No. CV-16-870194: 6610 Sues the Scotts
{¶ 9} On October 31, 2016, 6610 filed an amended complaint against the Scotts and New Spirit for breach of contract, seeking declaratory relief and compensatory damages.[4] The memorandum, which 6610 referred to as "a memorandum of the land contract," was attached to the complaint. Also attached to 6610's complaint was the unsigned purchase agreement and installment contract as well as the installment contract's exhibits, the quit claim deed conveying the property to 6610, and an unsigned promissory note between New Spirit and Agarwal.
{¶ 10} The Scotts and New Spirit filed a motion for a more definite statement, alleging that
it is unclear from the allegations in the complaint and/or amended complaint and the documents attached whether plaintiff is alleging that defendants agreed to purchase the real property at issue, and are in breach of their agreement to do so, or whether they merely leased the property and are simply liable for unpaid rent.
The trial court granted their motion.
{¶ 11} As a result, 6610 filed a "Second Amended Complaint" in December 2016. In its new complaint, however, 6610 also included Chemical Bank f.k.a. Talmer Bank and W. Christopher Murray II, the *369 Cuyahoga County Treasurer, as new party defendants. The complaint included a breach of contract claim and additionally alleged, under Count II, that the "Scott Defendants have falsely sought to characterize the contract in issue as a lease when it in fact is a land contract governed by the provisions of Ohio Revised Code Chapter 5313." The complaint also included an "alternative" third count for foreclosure.
{¶ 12} The Scotts and New Spirit filed a joint answer. Chemical Bank also filed an answer. Murray did not file an answer.
{¶ 13} In February 2017, 6610 moved for leave to add Agarwal as a new party plaintiff to its case as well as to assert an additional claim through a third amended complaint. The court struck 6610's motion from the docket and ordered that Agarwal file a separate action.
B. Case No. CV-17-876762: Agarwal Sues the Scotts
{¶ 14} On March 2, 2017, Agarwal filed a separate complaint against the Scotts and New Spirit with claims for declaratory relief, promissory estoppel, foreclosure, and breach of contract. Attached to Agarwal's complaint was the general warranty deed giving Agarwal ownership of the property, the purchase agreement, the quit claim deed, and a document titled, "New Spirit Revival Ministries: Receivables" ("the receivables document"), which listed property payments and tax calculations for New Spirit between July 2010 and June 2017.[5]
{¶ 15} On the same day that Agarwal filed his complaint, 6610 filed a motion to consolidate Cuyahoga C.P. Nos. CV-16-870194 and CV-17-876762, which the trial court granted.
{¶ 16} The Scotts and New Spirit filed an answer in Case No. CV-16-870194 and set forth counterclaims against Agarwal for unjust enrichment and defamation. Agarwal filed a reply in regards to the counterclaims against him.
{¶ 17} During a pretrial hearing, the trial court - in an attempt to resolve the allegations in Count II of 6610's complaint seeking declaratory relief - directed 6610, the Scotts, and New Spirit to address the parties' contractual relationship as to the real estate. Specifically, the parties were to brief whether the agreement was a land contract, a lease, or other form of real estate contract. The parties agreed to file cross-motions for summary judgment as to that issue.
{¶ 18} In its motion for partial summary judgment, 6610 argued that the contract was a land contract and was outside the statute of frauds - an affirmative defense raised by the defendants - because the parties partially performed the contract and because the contract was evidenced by sufficient writings. 6610 also argued that, in the alternative, the contract was a land installment contract. 6610 stated that the contract in issue was not a lease or an option contract and that the Scotts and New Spirit breached the contract. Finally, 6610 stated that it was entitled to a declaratory judgment stating that the contract was either a contract of sale or a land installment contract and that the defendants breached the contract. Attached to the motion was Agarwal's affidavit, which stated in relevant part,
[Darrel] Scott further stated that he was acting on behalf of the Defendants, and that New Spirit would make all payments for the Property.
*370 I considered myself to be dealing with New Spirit, and was relying on New Spirit and the income generated by New Spirit for payment.
The affidavit also stated that the Scotts retained an attorney to create the purchase agreement; however, Agarwal also stated that "Scott * * * decided that he did not want to sign a formal agreement, so neither of the documents[, the purchase agreement and installment contract,] were executed." He also stated that "6610 has been unable to sell or lease the property" since the defendants vacated the property.
{¶ 19} In their joint memorandum in opposition to 6610's motion for partial summary judgment and joint cross-motion for partial summary judgment, the Scotts and New Spirit argued that the memorandum failed to meet the statute of frauds requirements; the purchase agreement and installment contract were unenforceable because they were unsigned and failed to meet the statute of frauds's requirements; and partial performance did not excuse the documents' failure to comply with the statute of frauds. They also argued that the memorandum was not an enforceable lease under the statute of conveyances because it failed to identify the property and was not notarized. The defendants argued that because of that failure, they were only liable for damages limited to "the weekly rental payment for any weeks [the Scotts] resided in the property, but did not pay rent." As to New Spirit, the defendants argued that the memorandum did not reference New Spirit, New Spirit never resided at the property, and while the purchase agreement and installment contract referenced New Spirit, those documents were unsigned, and as a result, "there is no claim for a week-to-week tenancy against [New Spirit] and the claims against New Spirit should be dismissed."
{¶ 20} In its August 9, 2017 judgment entry, the trial court set forth the relevant facts and issue and stated,
There is no evidence in this case to show that the parties entered a land contract. Agarwal did not identify, assert or otherwise testify about a land contract or any other particular form of transaction, other than his statement that defendants wanted to purchase the real estate. His testimony did establish that some present possessory interest in the real property flowed from him to defendants; that they were to pay him for that interest; that they took possession of the property in that transaction; that upon their failing to continue payments, 6610 Cummings Court, LLC (the property's subsequent owner) gave them notice to leave as a landlord would do to evict tenants from real property; and that defendants in receipt of that notice, did quit possession of the property.
Plaintiff claims defendants have paid part, but not all, of the money due for their possession and use of the property. Agarwal states defendants "made the payments identified in Exhibit F" but testimony would be required to decipher this exhibit in order to determine the amount of payments actually made by them.
Plaintiff's Exhibit A/C [ (the memorandum) ] is not an enforceable agreement based on the undisputed evidence before the Court. Plaintiff terms it a "memorandum agreement" but provides no evidence as to the meaning of that term or the meaning possessed by the parties. On its face this exhibit is merely a collection of words. It does not state what is being purchased and does not identify the parties to any purchase. Indeed not all of its words are legible; no sworn testimony is provided to identify the words let alone their meaning. The closest to a sentence is the sequence, *371 "Scotts pay property taxes/insurance." Even that is susceptible of more than one meaning: is it the Scotts will pay the taxes or the insurance or is it the Scotts will pay the taxes and the insurance?
This document might evidence the state of negotiations or the preference of one side of the negotiations for a possible purchase arrangement over time or the willingness of both sides to consider a future transaction having certain attributes, but no evidence permits any such conclusion. Even though the alleged human participants in this transaction are apparently alive and available, very limited testimony was offered to inform an outsider of the nature of their dealings and their intent in them.
Likewise the unexecuted documents of Exhibit B/B [ (the purchase agreement) ] and B/D [ (the installment contract) ] were not the subject of evidence that made them relevant to the inquiry under Count II. Agarwal's uncontradicted testimony that he looked to New Spirit Revival Center Ministries Inc. to pay under the parties' arrangement is not evidence of that corporation's obligation or willingness to do so.
The Court finds there is no genuine dispute of material fact in the evidence on summary judgment and that construing the evidence most strongly in defendant's favor, a reasonable trier of fact can come to but certain conclusions, and the Court declares the following facts are without controversy based on the undisputed evidence before it on summary judgment, as follows:
1. Darrel and Belinda Scott were tenants of plaintiff. There is no evidence in this case to support defendants' contention that the parties entered a lease on a week to week basis. The terms of such lease will require proof at trial.
2. The Scotts obtained their original tenancy with Agarwal personally and his corporation 6610 Cummings Court, LLC now considers itself a landlord with respect to the Scotts' tenancy. Agarwal in his affidavit described his corporation as such landlord.
3. Since the corporation received title in September 2010 and the Scotts received their tenancy in March 2010, all rents from March 2010 to the date of their vacation of the premises were owed to one or more of Agarwal and 6610 Cummings Court, LLC. Plaintiff did not assert the exact amount of unpaid money due from the commencement of the tenancy to defendants' vacation of the property or from commencement of the tenancy to filing of the complaint.
4. No evidence was presented to establish that defendant New Spirit Revival Ministries Inc. occupied or otherwise used or became obligated to plaintiff in this transaction. No evidence established who was authorized to bind this defendant to any transaction in real estate.
5. The [memorandum] is not a land contract and did not create one; [The memorandum] is not a land contract and did not create one even if [the purchase agreement and installment contract] are read in connection with it;
6. Plaintiff remains the lawful owner of the subject real property; and the defendants have no right, title, or interest in the real property. There appears no need to enjoin the defendants from asserting or claiming any interest in the real property because they have asserted no such interest in this action. There is no need to quiet title to the real property because no cloud to its title exists[.]
{¶ 21} Based on its above findings, the trial court concluded that 6610's count for *372 foreclosure was moot and subject to dismissal. It also dismissed Chemical Bank and the Cuyahoga County Treasurer from the action. The trial court additionally found that New Spirit was entitled to judgment as a matter of law. Accordingly, the trial court denied 6610's motion and granted the defendants' motion in part. The trial court's judgment entry stated, "Trial is required upon the balance of issues under plaintiff's complaint, specifically its request for money damages. Such trial will be consolidated with trial under case number 870194."
{¶ 22} In December 2017, the trial court held a bench trial on the breach of contract counts alleged in 6610's two consolidated complaints. Prior to trial, the parties stipulated to certain facts, including that 6610 and Agarwal were one in the same. During the trial, Darrel Scott and Agarwal testified.
{¶ 23} Scott testified that when he spoke with Agarwal about possibly occupying the home, he proposed "to lease the house with the option to purchase years later if I decided to exercise the option" and that "[i]f [he] decided to purchase the property, [he] would make option payments." Agarwal testified that per their agreement, the defendants were to pay a $50,000 deposit for their down payment, all of the construction costs (which would be deducted from the purchase price), and $2,500 per week during the first year and a four percent increase in the weekly rent every subsequent year. He explained that the total amount for rental payments and property taxes after the seven years was to be $1,161,861.33 and that did not include "the amount [the defendants were] supposed to pay every year" toward the purchase price.
{¶ 24} Agarwal then testified about plaintiff's exhibit No. 5 ("Exhibit 5"), the receivables document, which Agarwal prepared concerning the payments made on the home, and that, according to Agarwal, showed that he received $862,250 from the Scotts. Exhibit 5 is a ten-page document. The first two pages, titled "Summary," lists items such as balloon payments, property taxes, insurance premiums, damage costs, lease/interest payments related to the property, and has two columns listing amounts owed to Agarwal and amounts that the Scotts paid for those items. The next pages, titled, "New Spirit Revival Center Ministries: Receivables," contain the "weekly lease/interest" payments for July 2010 to June 2017, as well as a breakdown of the amounts owed. The rest of Exhibit 5 is a list, titled, "New Spirit Revival Center Ministries: Payments," which shows payments that Agarwal received from 2010 to 2016.
{¶ 25} With regard to Exhibit 5, the following exchange took place at trial
COURT: Well, let me ask you, does your client have [the payments] written out?
ATTORNEY: You have a summary of monies you received, correct?
AGARWAL: Right.
ATTORNEY: You prepared that?
AGARWAL: Yes.
ATTORNEY: Is that a document that you personally prepared?
AGARWAL: Yes.
ATTORNEY: Did you prepare it in the ordinary course of business, ordinary course of your business?
AGARWAL: Yes. I have all the accounting on computer.
* * *
ATTORNEY: Can you explain this document to us?
* * *
AGARWAL: Okay. This is Plaintiffs' Exhibit 5, Summary. So total amount *373 received from Scotts over the entire years is $862,250. * * * 95%, 98% [of the payments for the home] came from the church's account on a weekly basis wired transferred from their Chase account.
{¶ 26} On December 27, 2017, the trial court issued a judgment entry, which stated,
No trial evidence established that New Spirit was a party or guarantor of the lease between Plaintiffs and the Scotts. For that matter, no evidence established who had the authority to bind the corporation or enter contracts for it. No evidence established that either of the Scotts had authority to act for or bind New Spirit.
No evidence established that New Spirit was a party to any lease agreement with Plaintiffs or that it occupied or used the subject property in any way. No writing bound it to pay any sum to Plaintiffs or to pay any sum on the Scotts' behalf. When the Scotts undertook to finish the home's interior * * *, the evidence showed they purchased some items and services in New Spirit's name, New Spirit may have paid for some items, and New Spirit's tax exempt status was used which avoided the need to pay sales tax. The Court finds that evidence does not show Plaintiffs had a contractual agreement with the New Spirit corporation or the corporation had a financial obligation to Plaintiffs.
As a result, the court entered judgment in favor of New Spirit.
{¶ 27} As to the Scotts, the trial court's judgment entry stated,
Defendant Scotts rely on Plaintiffs' admission that they paid $862,250.00 over the lease period. They calculated their total rent obligation at $877,899.85. Therefore, they reason, the most they could owe Plaintiffs is $15,649.85, the difference. The Court finds the evidence supports only this analysis and conclusion.
In contrast, Plaintiffs presented testimony to prove the parties' agreement paralleled the terms of Plaintiffs' Exhibit 1, a one page, hand written document titled "lease option." Even though a lease with option to purchase agreement was never executed, Plaintiffs' theory of recovery under their breach of lease counts called upon Defendant Scotts to pay all sums mentioned (however obliquely) in Exhibit 1. In effect, Plaintiffs want the economic benefit of such an agreement even though it was not entered and Plaintiffs admit it was not entered. Or, put another way, Plaintiffs seek enforcement of a purchase agreement that was discussed but not made. Plaintiff Agarwal admitted the purchase was never agreed to after it was discussed but he testified to his solid belief that the Scotts would one day purchase the home.
{¶ 28} The trial court discussed the sums listed in the memorandum. The trial court also discussed Exhibit 5, the receivables document, and found that it had no credibility and that eight out of the ten pages of the exhibit - the pages titled, "New Spirit Revival Center Ministries: Receivables" and "New Spirit Revival Center Ministries: Payments" - were not properly authenticated. Additionally, the trial court found that the evidence showed that the Scotts were not obligated to pay real estate taxes and that there was no dispute concerning insurance for the property. The trial court found that the Scotts' payments to finish the home would not be credited toward their rent obligation. As to the plaintiffs' claims that the Scotts damaged the home, the trial court found that the plaintiffs did not present "factually or legally sufficient evidence" to support the *374 alleged damage that the Scotts did to the home upon their vacation and, therefore, did not award the plaintiffs with any damages. As a result, the court entered judgment against the Scotts, "jointly and severally, for $15,649.85 upon Count 1 of CV-16-870194 and upon duplicate Count 2 of CV-17-876762." The court noted that its judgment was partial only because a trial was still scheduled for the Scotts' counterclaims against the plaintiffs. The Scotts subsequently voluntarily dismissed without prejudice.
{¶ 29} It is from this judgment that 6610 and Agarwal now appeal.
II. Law and Analysis
{¶ 30} 6610 and Agarwal's first eight assignments of error contest the trial court's findings and conclusions of law set forth in its August 2017 judgment entry, which found that the agreement between the parties was a lease, not a land contract, and granted partial summary judgment to the Scotts and New Spirit. The last eight assignments of error (numbers 9-16) contest the trial court's findings and conclusions of law set forth in its December 2017 judgment entry, which awarded appellants $15,649.85 in damages, made findings related to its damages calculation, and found that New Spirit was not a party to the lease agreement. We will address the assignments of error in those groups.
A. Summary Judgment - Assignments of Error 1 through 8
{¶ 31} Considering appellants' first eight assignments of error together, we find that appellants' arguments supporting those assignments of error boil down to three main arguments: the trial court erred in denying their motion for partial summary judgment and granting appellees' motion for summary judgment because (1) the contract in issue was a sales contract or alternatively, a lease purchase agreement, not a lease; (2) the memorandum, the purchase agreement, and the installment contract satisfied the statute of frauds; and (3) the parties partially performed the contract, thereby removing the contract from the statute of frauds's coverage.
{¶ 32} An appellate court reviews a trial court's decision to grant summary judgment de novo. Grafton v. Ohio Edison Co. , 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). De novo review means that this court independently "examine[s] the evidence to determine if as a matter of law no genuine issues exist for trial." Brewer v. Cleveland Bd. of Edn ., 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist. 1997), citing Dupler v. Mansfield Journal , 64 Ohio St.2d 116, 413 N.E.2d 1187 (1980). In other words, we review the trial court's decision without according the trial court any deference. Smith v. Gold-Kaplan , 8th Dist. Cuyahoga No. 100015, 2014-Ohio-1424, 2014 WL 1327890, ¶ 9, citing N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs. , 121 Ohio App.3d 188, 699 N.E.2d 534 (8th Dist. 1997).
{¶ 33} Under Civ.R. 56(C), summary judgment is properly granted when (1) "there is no genuine issue as to any material fact"; (2) "the moving party is entitled to judgment as a matter of law"; and (3) "reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made[.]" Harless v. Willis Day Warehousing Co. , 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). Because it ends litigation, courts should carefully award summary judgment only after resolving all doubts in favor of the nonmoving party and finding that "reasonable minds can reach only an adverse conclusion" against the nonmoving party. Murphy v. Reynoldsburg , 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).
*375 {¶ 34} "The burden of showing that no genuine issue exists as to any material fact falls upon the moving party. Once the moving party has met his burden, it is the non-moving party's obligation to present evidence on any issue for which that party bears the burden of production at trial." Robinson v. J.C. Penney Co. , 8th Dist. Cuyahoga Nos. 62389 and 63062, 1993 WL 172981, 5 (May 20, 1993), citing Harless and Wing v. Anchor Media, Ltd. of Texas , 59 Ohio St.3d 108, 570 N.E.2d 1095 (1991). "The moving party is entitled to summary judgment if the nonmoving party fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." Brandon/Wiant Co. v. Teamor , 125 Ohio App.3d 442, 446, 708 N.E.2d 1024 (8th Dist. 1998), citing Celotex Corp. v. Catrett , 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
{¶ 35} Turning to the enforceability of the documents themselves first, appellants argue that the memorandum, purchase agreement, and installment contract together constitute a contract to purchase the property. Appellees argue that the purchase agreement and land installment contract were not executed properly and do not satisfy the statute of frauds.
{¶ 36} Appellants' reliance on the memorandum, purchase agreement, and installment contract is misplaced because none of those documents individually or together constitute an enforceable agreement. All of the documents fail to satisfy the statute of frauds.
{¶ 37} R.C. 1335.05 states,
No action shall be brought whereby to charge the defendant, * * * upon a contract or sale of lands, * * * or interest in or concerning them, or upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.
The statute of frauds ensures that agreements for the transfer of realty interests are "commemorated with sufficient solemnity. A signed writing provides greater assurance that the parties and the public can reliably know when such a transaction occurs. It supports the public policy favoring clarity in determining real estate interests and discourages indefinite or fraudulent claims[.]" N. Coast Cookies, Inc. v. Sweet Temptations, Inc. , 16 Ohio App.3d 342, 348, 476 N.E.2d 388 (8th Dist. 1984). "The Statute of Frauds was enacted to provide courts with substantive written evidence as an aid in determining parties' rights under a contract. The requirements of the statute were intended to prevent fraud, not to act as a shield to those who would hide behind it to avoid their legal responsibilities." Cary v. Patton , 3d Dist. Allen No. 1-96-73, 1997 WL 175501, 3 (Mar. 28, 1997), citing Hodges v. Ettinger , 127 Ohio St. 460, 189 N.E. 113 (1934).
{¶ 38} "Agreements that do not comply with the statute of frauds are unenforceable." Qutifan v. Shafiq , 2016-Ohio-4555, 70 N.E.3d 43, ¶ 13 (10th Dist.), citing Hummel v. Hummel , 133 Ohio St. 520, 14 N.E.2d 923 (1938). The statute of frauds is an affirmative defense to a claim for breach of contract. ELM Invests., Inc. v. BP Exploration & Oil, Inc. , 10th Dist. Franklin No. 11AP-1000, 2012-Ohio-2950, 2012 WL 2463999, ¶ 11.
{¶ 39} To satisfy the statute of frauds, a writing must (1) identify the subject matter, (2) establish that a contract has been made, and (3) state the essential terms with reasonable certainty. N. Coast Cookies at 349, 476 N.E.2d 388. The writing *376 does not need to contain all the terms of the agreement between the parties. Id. , citing Normandy Place Assoc. v. Beyer , 2 Ohio St.3d 102, 443 N.E.2d 161 (1982).
{¶ 40} Here, the documents do not satisfy the statute of frauds because the purchase agreement and land installment contract were not executed or signed by the parties, and the memorandum does not identify the subject matter of the agreement, the property, and does not state the essential terms with reasonable certainty. See R.C. 1335.05 (requiring that there be a writing signed by the defendant to bring an action upon a contract for sale of lands) and N. Coast Cookies at 349, 476 N.E.2d 388 (a contract must identify the subject matter to satisfy the statute of frauds). Moreover, the memorandum, purchase agreement, and installment contract fail to satisfy the statute of conveyances because none were acknowledged. See R.C. 5301.01 (requires that a land contract or lease of any interest in real property "be acknowledged" before an appropriate official).[6] Therefore, none of the documents constitute an enforceable land contract, lease, or other type of agreement required to be in writing.
{¶ 41} Contrary to appellants' position, partial performance does not save the memorandum, purchase agreement, and installment contract from their statute-of-frauds failings. An agreement that fails to satisfy the statute of frauds or the statute of conveyances may still be enforceable if the parties partially performed the agreement. Delfino v. Paul Davies Chevrolet, Inc. , 2 Ohio St.2d 282, 286, 209 N.E.2d 194 (1965) ; see also Ruben v. S.M. & N. Corp. , 83 Ohio App.3d 80, 82, 613 N.E.2d 1101 (8th Dist. 1993) ("[P]artial performance may remove a defectively executed lease from the operation of the Statute of Conveyances.").
"Part performance of a lease * * * removes the lease agreement from the operation of the statute when four factors are present: (1) unequivocal acts by the party relying on the agreement; (2) the acts are exclusively referable to the agreement; (3) the acts change the party's position to his detriment; and (4) the acts make it impossible to place the parties in statu quo."
Ruben at 82, 613 N.E.2d 1101, quoting Loveland Properties v. Ten Jays, Inc. , 57 Ohio App.3d 79, 567 N.E.2d 270 (1st Dist. 1988).
{¶ 42} Here, the fact that the Scotts occupied the property and paid rent is not enough to constitute partial performance. See Green v. Katz , 8th Dist. Cuyahoga Nos. 37639, 37666, and 37718, 1978 Ohio App. LEXIS 7988, 9, 1978 WL 218135 (Oct. 12, 1978), quoting Delfino ("Most cases 'hold that possession and payment of the rent are not sufficient to relieve the parties from the requirements of the [statute of conveyances]. Ordinarily such acts will result in a periodic tenancy."). Instead, there must be "unequivocal acts by the party relying upon the agreement, which are exclusively referable to the agreement *377 and which have changed [the party's] position to his detriment and make it impossible or impractical to place the parties in statu quo." Delfino at 287, 209 N.E.2d 194. We do not find that there were unequivocal acts in this case. Both parties agree that the Scotts paid appellants $2,500 a week for approximately three years and $2,850 a week after that until the Scotts stopped paying and left the property. Those terms are not included in the memorandum, purchase agreement, or installment contract. Further, it is not impossible to place the parties in status quo - the Scotts are able to pay appellants the amount of rent they failed to pay while they occupied the property, which remains under 6610's ownership. Therefore, the terms set forth in the purchase agreement, installment contract, and memorandum were not partially performed and are not removed from the statute of frauds or the statute of conveyances and are unenforceable.
{¶ 43} While there was not an enforceable written agreement between the parties, the Scotts still took possession of the property, creating a tenancy at will. "[I]t is well settled that where a purported lessee takes possession under a defectively-executed lease and pays rent, a tenancy will be implied and is subject to all of the terms of the purported lease except duration." Ruben at 83, 613 N.E.2d 1101. "[A] tenancy at will is created when possession of the premises is taken under an invalid lease." Manifold v. Schuster , 67 Ohio App.3d 251, 255, 586 N.E.2d 1142 (4th Dist. 1990). The duration of a lease will depend upon the contract's provisions for payment of rent; specifically, if the contract says that rent will be paid on a month-to-month basis, then the contract implies that the tenancy is on a month-to-month basis. Id.
Possession taken and rents paid under a defectively executed lease creates a tenancy from year to year, or month to month, dependent upon the terms as to payment of rentals, and the lessor, by instituting an action for accrued rentals or for the purpose of ejecting the lessee for nonpayment of rentals, is not thereby estopped to question the validity of such lease.
Lithograph Bldg. Co. v. Watt , 96 Ohio St. 74, 117 N.E. 25 (1917), paragraph six of the syllabus.
{¶ 44} As a result, we agree with the trial court that the relationship between the parties was a week-by-week tenancy under which the Scotts were to pay 6610 rent. Accordingly, we overrule appellants' first eight assignments of error and affirm the trial court's grant of partial summary judgment to the Scotts.
B. Damages - Assignments of Error 9 through 16
{¶ 45} In appellants' last eight assignments of error (numbers 9 through 16), they contest the trial court's journal entry concerning its determination of damages and finding that New Spirit was not a party to the lease.
{¶ 46} Foremost, to the extent that assignments of errors 9, 10, 11, and 13 rely on the argument that the Scotts had agreed to purchase the property, we overrule them. As we discussed in the preceding section, there was no enforceable agreement to purchase the property between the parties.
{¶ 47} Further, in their ninth assignment of error, appellants argue that the Scotts breached the contract by not paying two additional years of rent. Appellants reason that because the Scotts stayed on the property after "the initial five-year term of the Agreement, * * * this triggered *378 [an] automatic two year extension of the Agreement[.]" We have already found, however, that there was not an enforceable agreement between the parties. Further, as already discussed and more fully discussed below, the relationship between the parties was a week-by-week tenancy, obligating the Scotts to pay rent for the weeks they occupied the property. Therefore, we overrule that portion of the ninth assignment of error as well.
{¶ 48} Turning to the twelfth assignment of error regarding the trial court's calculation of damages, appellants argue that the trial court erred when it found that the Scotts had a week-by-week tenancy, applied the Scotts' "principal payments" towards their rent obligation, and did not include the property taxes as well as costs to repair damage in the award for damages. We disagree.
{¶ 49} We have already concluded that the trial court was correct when it found that the Scotts were week-by-week tenants of 6610. Turning to the amount of rent owed, none of the parties dispute that the Scotts paid appellants on a weekly basis and that from July 10, 2010 through February 22, 2013, they paid appellants $2,500 and that from February 23, 2013 through October 10, 2016, they paid $2,850. The record shows that the Scotts began paying $2,850 to account for property taxes.
{¶ 50} Agarwal admitted that the Scotts' total obligation was $877,899.85 for the weeks they occupied the property. Agarwal also admitted that he received $862,250 from the Scotts during the period that they occupied the property.
{¶ 51} Further, contrary to appellants' continued assertions, there was no enforceable agreement for the purchase of the property, so the labeling of the amounts paid by the Scotts as "principal payments" is incorrect. Instead, all of the amounts that the Scotts paid were for the purposes of renting the home under a week-by-week tenancy as we discussed above, and all of the amounts it paid would be considered as rent and credited towards the amount they ultimately were responsible for. There was also no enforceable agreement that stated that the Scotts were required to pay the property taxes, and therefore, we disagree with the allegation that the Scotts owed more than just rent. Finally, appellants failed to provide sufficient evidence of their alleged costs for repairs, and therefore, the trial court's decision not to include those costs in its calculation was correct. Therefore, the Scotts owed rent for the weeks that they occupied the property and that they did not pay. Subtracting the amount they paid, $862,250, from the amount they owed, $877,899.85, we find that appellants are entitled to damages of $15,649.85.
{¶ 52} Based on the above, we find that the trial court did not err and overrule appellants' twelfth assignment of error.
{¶ 53} Although not specifically delineated in an assignment of error, appellants also argue that they are entitled to prejudgment interest under R.C. 1343.03.[7]
*379 Here, appellants failed to request prejudgment interest during the damages hearing and did not move for prejudgment interest subsequent to filing their complaints or after the trial court rendered judgment. As a result, we find that no error occurred.
{¶ 54} We will next address appellants' fourteenth assignment of error, which argues that the trial court erred in dismissing New Spirit as a defendant. We disagree. Here, the memorandum is the only signed document, and nowhere in that document is there any indication that New Spirit was entering into an agreement or that either of the Scotts were signing the agreement on behalf of New Spirit. In fact, no evidence was submitted to establish that the Scotts had the authority to bind New Spirit to a contract. As a result, we overrule appellants' fourteenth assignment of error.
{¶ 55} In appellants' fifteenth assignment of error, they argue that the trial court erred in failing to consider their summary of damages, the receivables document (Exhibit 5). Specifically, they contest the trial court's finding that the receivables document was not properly authenticated. They also argue that the document was properly admitted under Evid.R. 803(6) and 1006 because the parties stipulated to their respective summaries.
{¶ 56} During trial, appellants offered the receivables document into evidence. The transcript shows that while appellees' counsel did not object to its admissibility, appellees disagreed with the amount of damages that the exhibit alleged. In its judgment entry concerning the damages award, the trial court explained that it did not find the receivables document to be credible and concluded that because it "had no information about [the exhibit] - in particular no information comporting with the requirements of Evid.R. 803(6) - * * * [it] does not rely on [the exhibit] in making findings in this matter."
{¶ 57} We find that the trial court's comments on the admissibility of the receivables document are inconsequential to appellants' arguments because the exhibit was admitted. The crux of appellants' argument instead hinges on the trial court's finding that the exhibit was not credible. The trial court found that the document's first two pages were not credible, stating that the pages "were useful to organize Agarwal's testimony but have no credibility. They simply demonstrate his position. They have no reliability or integrity as the document appears simply prepared for the litigation. No bank or accounting records were introduced by Plaintiffs to corroborate the payments listed[.]" As to the remaining pages of the document, the court found that those pages were not properly authenticated because Agarwal did not describe or discuss those pages during his testimony. As the trial court noted, those remaining pages were not explained "beyond their having been created to help Agarwal testify or illustrate his position[,]" and "[n]o testimony gave them credibility by explaining how they were created."
{¶ 58} Considering that there was no evidence in the record to support the information contained in the receivables document in addition to our resolution of issues concerning principal payments, insurance, and property damage, we will not second-guess the trial court's credibility determination. See Reidel v. Akron Gen. Health Sys. , 2018-Ohio-840, 97 N.E.3d 508, ¶ 29 (8th Dist.) ("The resolution of conflicts in evidence and the credibility of the witnesses and resolutions of conflicts in evidence *380 are matters for the trier of facts."). Accordingly, we overrule appellants' fifteenth assignment of error.
{¶ 59} Turning to appellants' sixteenth assignment of error, we find that the trial court's judgment was not against the manifest weight of the evidence.
{¶ 60} In Eastley v. Volkman , 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, the Ohio Supreme Court held that the manifest weight standard for criminal cases, set forth in State v. Thompkins , 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), applies in civil cases. Id. at ¶ 17. The court stated,
Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."
Id. at ¶ 12, quoting Thompkins .
{¶ 61} Based on our discussion of the preceding assignments of error as well as the fact that appellants have made no showing sufficient to overcome the above standard, we overrule their sixteenth assignment of error.
{¶ 62} Judgment affirmed.
MARY EILEEN KILBANE, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR

In their briefs, the parties refer to the document as a memorandum so we will as well.

The quit claim deed conveying the property to 6610 shows that Agarwal's wife, Archana Agarwal, also had an interest in the property "as to dower only," which she transferred via the quit claim deed.

At the damages hearing, Agarwal testified that the Scotts vacated the property on "October 10th, 11th, something like that." Further, after the damages hearing, the trial court found that "[t]he parties did not substantially dispute the Scotts vacated the premises no later than October 10, 2016[.]" While Agarwal's 10th and 13th assignments of error state that the trial court erred in determining the end date of the contract, his argument is that the Scotts' possession of the property lasted past the five-year term set forth in the memorandum and therefore "triggered [an] automatic two year extension of" the Scotts' alleged agreement to purchase the home. Those assignments of error, however, do not contest the date that the Scotts vacated the property.

6610 filed its original complaint on October 7, 2016, and its first amended complaint on October 17, 2016.

The documents were identified as Exhibits A, B, E, and F. It is unclear what happened to Exhibits C and D. There is what appears to be part of the installment contract also attached as an exhibit; however, the cover page of that document as well as an exhibit label is missing.

R.C. 5301.01(A) states, in full, "A deed, mortgage, land contract as referred to in division (A)(21) of section 317.08 of the Revised Code, or lease of any interest in real property and a memorandum of trust as described in division (A) of section 5301.255 of the Revised Code shall be signed by the grantor, mortgagor, vendor, or lessor in the case of a deed, mortgage, land contract, or lease or shall be signed by the trustee in the case of a memorandum of trust. The signing shall be acknowledged by the grantor, mortgagor, vendor, or lessor, or by the trustee, before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgement and subscribe the official's name to the certificate of the acknowledgement."

It appears that there is a disagreement among Ohio appellate courts as to whether a party's failure to include prejudgment interest in their prayers for relief waives such a claim. Compare Cugini & Capoccia Builders, Inc. v. Ciminello's, Inc. , 10th Dist. Franklin No. 06AP-210, 2006-Ohio-5787, 2006 WL 3111800, ¶ 34 ("[T]he failure to include prejudgment interest in the prayer for relief operates as a waiver of such a claim.") with Coon v. Tech. Constr. Specialties, Inc., 9th Dist. Summit No. 24542, 2010-Ohio-417, 2010 WL 447052, ¶ 18 ("A party does not waive his right to seek prejudgment interest by failing to pray for prejudgment interest in his complaint. * * * We have explained that a prejudgment interest award is based upon a party's conduct during the litigation. * * * Therefore, a litigant would not know prior to drafting his complaint that the opposing party would fail to engage in good faith during the pendency of the case.").